78 F.3d 585
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Danny and Leona SMITH, Plaintiffs-Appellees,
v.
Greg WILLIAMS, Calloway County Deputy Sheriff, Individually
and in his Official Capacity with the Calloway County
Sheriff's Department; J.D. Williams, Former Sheriff of
Calloway County, Individually and in his Official Capacity
with the Calloway County Sheriff's Department; and Calloway
County, Kentucky, Defendants-Appellants.
 No. 94-6306.
 United States Court of Appeals, Sixth Circuit.
 March 6, 1996.
 
 Before: BOGGS and NELSON, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs Danny and Leona Smith sued defendants Greg Williams, J.D. Williams, and Calloway County, Kentucky under 42 U.S.C. § 1983 for violations of their rights under the Fourth, Fifth, Eighth and Fourteenth Amendments. Defendant Greg Williams is a Deputy Sheriff who is employed by defendant Calloway County, and defendant J.D. Williams was the Sheriff of Calloway County at all times relevant to this complaint.[1] Plaintiffs' suit stemmed from an alleged pattern of harassment by Deputy Greg Williams, which culminated in the latter's decision to arrest and pursue false charges against plaintiff Danny Smith.
 
 
 2
 Shortly after the close of discovery, defendants filed a motion for summary judgment in which they argued, inter alia, that plaintiffs' claims were barred by the applicable statutes of limitations and, even if the claims were timely, that defendants were entitled to qualified immunity. The district court denied defendants' motion for summary judgment without oral argument and without a written opinion, and defendants brought this appeal.
 
 
 3
 For the reasons set forth below, the decision of the district court will be AFFIRMED in part and REVERSED in part.
 
 
 4
 * The alleged unconstitutional conduct that is the subject of Plaintiffs' complaint began as early as April of 1991, when Defendant Greg Williams was involved in the arrests of Danny Smith and Leona Smith and the search of their home and vehicle. According to plaintiffs, the resulting charges were dismissed in their entirety prior to trial.
 
 
 5
 Following the dismissal of those charges, Defendant Greg Williams allegedly vowed that he would "get Leona (Brown) Smith and Danny Smith and put them behind bars if it's the last thing I do." Shortly after this statement was made, plaintiffs allege that defendant Greg Williams began to patrol their residence and follow them when they left their home. Plaintiffs allege that these "intrusions" escalated to illegal stops. For example, Plaintiff Danny Smith asserts that Deputy Greg Williams used an unauthorized police "roadblock" to stop his vehicle. In addition to Defendant Greg Williams' involvement with Plaintiff Danny Smith, Leona Smith asserts that Deputy Williams also harassed her in a similar manner.
 
 
 6
 Plaintiffs allege that Sheriff J.D. Williams failed to take any action to stop defendant Greg Williams from violating their civil rights. In this regard, Plaintiffs assert that they called Sheriff Williams on at least three occasions to complain of Greg Williams' actions. Plaintiffs assert that Sheriff Williams told them that he had talked to Greg Williams a few times; however, he acknowledged in his deposition that he did not confront Deputy Williams regarding all of the complaints.
 
 
 7
 On June 12, 1992, Danny Smith was riding in a Jeep along with Al Harville and Brian Rogers. While attempting to negotiate a sharp turn in the road, the Jeep rolled over, severely injuring Danny Smith and Al Harville. Brian Rogers left the scene and walked to the State Line Lounge to call for help. He then walked next door, where Danny Smith's father lived, to tell him about the accident. Danny Smith's father called for an ambulance, and he and Rogers drove back to the accident. On the way, they met Danny Smith, who was walking toward them. According to the elder Smith, his son's arm was "bleeding pretty bad" and the bone was "sticking out of it."
 
 
 8
 The Smiths drove back to the accident scene to pick up Al Harville. However, according to Danny Smith, Harville asked the Smiths not to move him because he was hurt,[2] preferring instead to wait for an ambulance. At that point, the elder Smith drove his son to the hospital.
 
 
 9
 When Deputy Greg Williams arrived at the scene, Al Harville was lying in a ditch with serious injuries. Williams immediately called a rescue squad.
 
 
 10
 The significance of the June 12, 1992, accident depends on who was driving the Jeep at the time of the accident. According to Deputy Williams, on the night of the accident, Harville told him that Danny Smith was driving the vehicle at the time of the accident. Williams recorded this information in his accident report. Al Harville's deposition revealed that it was unclear who he had said was driving, but he acknowledged that he "could have told [Williams] that Danny was driving."
 
 
 11
 Plaintiff disputes Deputy Williams' contention that Harville implicated him as the driver. Plaintiff notes that Deputy Sheriff Mike Farley, who appeared on the scene shortly after the accident, did not hear Harville make any mention of who was driving the Jeep. In fact, Deputy Farley testified that Harville's speech was slurred and "rattling" as he slipped in and out of consciousness.
 
 
 12
 On the evening of the accident, Dennis Crawford, a Kentucky State Trooper and accident reconstructionist, was called to the scene. After reviewing the evidence at the scene, Crawford was unable to draw any conclusions as to which occupant was driving the Jeep at the time of the accident. Crawford noted in his deposition that he had observed empty beer cans in the back of the Jeep.
 
 
 13
 On the evening of the accident, Deputy Greg Williams went to the hospital to talk with Plaintiff Danny Smith. Although Williams was unable to talk to Smith, he would later testify that he smelled alcohol on Smith's breath. A blood alcohol test was subsequently performed at the hospital, and it revealed Danny Smith's blood alcohol content to be .1566%.
 
 
 14
 Based on what he had observed, as well as the statement allegedly made by Harville, Greg Williams completed a uniform citation charging Danny Smith with violations of KRS 189.010 (operating a motor vehicle under the influence of alcohol or other substance that may impair driving ability) and KRS 186.410 (operating a motor vehicle without an operator's license). Deputy Williams noted on the uniform citation that when he arrived at the scene of the accident, it was his understanding that two people had already left the scene to go to the hospital. Williams specifically noted that Al Harville indicated that Danny Smith was the driver of the vehicle. The citation also noted that there were several beer cans in the Jeep, and that a witness had informed the officer that Danny Smith and two other individuals had been seen leaving a bar shortly before the accident.
 
 
 15
 After his release from the hospital, Danny Smith was required to appear in court on the citation filed by Deputy Williams. Prior to trial, an agreement was reached with the county prosecutor for the dismissal of all charges based on the affidavits of Brian Rogers, Al Harville, Sandra Felock, and William Smith, all of whom indicated that Brian Rogers rather than Danny Smith was driving the Jeep at the time of the accident. The affidavits were filed with the Calloway County Clerk on July 21, 1992 in the case of Commonwealth v. Danny Smith.
 
 
 16
 On or about July 24, 1992, Deputy Greg Williams appeared before the Calloway County grand jury and provided testimony against Danny Smith with regard to the accident of June 12, 1992.[3] Prior to his appearance before the grand jury, Deputy Williams attempted to obtain a summons from the district court that would have enabled him to add a felony count for Wanton Endangerment to the then-pending district court charges against Danny Smith. For reasons that are unknown to this Court, the state judge did not issue the summons.
 
 
 17
 The grand jury indicted Danny Smith on the charges of (1) Driving under the Influence of Alcohol; (2) Driving Without an Operator's License; and (3) First Degree Wanton Endangerment. The last charge relates to Smith's having allegedly operated a vehicle in a reckless manner after having consumed intoxicants, causing an accident, and subsequently abandoning Al Harville at the scene.
 
 
 18
 On August 6, 1992, Danny Smith had a previously scheduled court appearance in the district court case against him. Smith asserts that he expected the misdemeanor charges against him to be dropped that day pursuant to the County Attorney's agreement. However, unbeknownst to him, he had been indicted by the grand jury approximately two weeks earlier. Accordingly, on August 6, 1992, Danny Smith was arrested at the courthouse by Deputy Sheriff Dan Bazzell on the grand jury charges.
 
 
 19
 On March 12, 1993, upon motion of the Commonwealth Attorney, all charges against Danny Smith were dismissed. On January 5, 1994, Plaintiffs Danny and Leona Smith filed the instant complaint against defendants.
 
 II
 
 20
 As a threshold matter, we must determine what aspects of the district court's order are reviewable in this appeal. Plaintiffs argue that this Court's review is limited to the denial of qualified immunity that is implicit in the district court's denial of defendants' motion for summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Defendants, meanwhile, rely on language from our decision in Blacke v. Parke, 4 F.3d 442 (6th Cir.1993), in support of their argument that appellate review under Mitchell need not be confined solely to the qualified immunity issue.
 
 
 21
 While we agree with defendants that a reviewing court can and should determine whether plaintiff has asserted a violation of a constitutional right at all, Siegert v. Gilley, 500 U.S. 226, 230 (1991), we do not believe that this includes the ability to hear and determine other issues and defenses unless those issues can independently satisfy the three-part collateral order test of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949) (allowing for immediate appeal of decisions that are complete and conclusive, that resolve important questions apart from the merits of the underlying action, and that are effectively unreviewable after final judgment). See Swint v. Chambers County Commission, 115 S.Ct. 1203 (1995).
 
 
 22
 Accordingly, we do not have jurisdiction to review the district court's denial of the defendants' statute of limitations defense, nor do we have jurisdiction to review the district court's denial of summary judgment with regard to Calloway County on the official capacity claims against the individual defendants. Our review is limited, therefore, to the district court's denial of qualified immunity as to Deputy Greg Williams and Sheriff J.D. Williams.
 
 III
 
 23
 A district court's denial of summary judgment based on qualified immunity is a matter of law which this Court reviews de novo. Black v. Parke, 4 F.3d 442, 444 (6th Cir.1993). When a claim to qualified immunity arises in the context of a motion for summary judgment, we must first decide whether the plaintiff has asserted a violation of a constitutional right. If he has, then we must examine whether summary judgment is warranted on the grounds of qualified immunity.
 
 
 24
 A. Plaintiffs' Fifth and Eighth Amendment Claims
 
 
 25
 Although Plaintiffs' complaint asserts that their claims arise under the Fourth, Fifth, Eighth, and Fourteenth Amendments, the complaint fails to include any allegations that would support a claim under either the Fifth or Eighth Amendments. In addition, plaintiffs have not attempted to make any argument in support of these claims in this appeal. Accordingly, the district court erred in failing to grant defendants' motion for summary judgment with respect to these claims.
 
 
 26
 B. Plaintiff Danny Smith's Fourteenth Amendment Claim
 
 
 27
 Prior to the Supreme Court's decision in Albright v. Oliver, 510 U.S. ----, 127 L.Ed.2d 114, 114 S.Ct. 807 (1994), this Court had recognized and approved the substantive due process claim for malicious prosecution. See Henry v. Metropolitan Sewer Dist., 922 F.2d 332 (6th Cir.1990), McMaster v. Cabinet for Human Resources, 824 F.2d 518, 522 (6th Cir.1987), and Cale v. Johnson, 861 F.2d 943, 949-950 (6th Cir.1988). In Albright, however, the Supreme Court held that a claim for malicious prosecution must be analyzed, if at all, under the Fourth Amendment rather than the "more generalized notion of substantive due process" contained in the Fourteenth Amendment. 127 L.Ed.2d at 133-34 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). Accordingly, to the extent that plaintiff Danny Smith is alleging a Fourteenth Amendment due process claim for malicious prosecution, it is clear that his complaint fails to assert a constitutional violation.
 
 
 28
 C. Danny Smith's Fourth Amendment Claim for Malicious Prosecution
 
 
 29
 Defendants assert that Danny Smith's malicious prosecution claim is barred by the doctrine of absolute immunity. In this regard, defendants assume that Smith's claim for malicious prosecution is premised entirely on his assertion that defendant Greg Williams gave perjurious testimony before the Calloway County grand jury.
 
 
 30
 However, Williams' argument misses the mark because Danny Smith's malicious prosecution claim is premised on the entirety of Greg Williams' conduct with regard to the initiation and encouragement of the prosecution. Specifically, Plaintiff is relying on (1) Deputy Williams' involvement in the initial investigation of the accident, (2) Deputy Williams' decision to charge Smith with the two misdemeanor offenses named in the citation, (3) Deputy Williams' unsuccessful attempt to get a state district court judge to sign the felony warrant, and (4) Deputy Williams' efforts to get the Commonwealth Attorney to convene a grand jury for purposes of adding the felony charge of Wanton Endangerment. Based on these allegations, plaintiff has alleged sufficient facts to make out a cognizable claim for malicious prosecution, even when one disregards defendant Williams' testimony before the grand jury.
 
 
 31
 On the issue of qualified immunity, the Supreme Court has indicated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1972). When analyzing the issue of qualified immunity, a court must first determine whether plaintiffs have identified a clearly established right alleged to have been violated; and then whether a reasonable police officer in the defendant's position should have known that his conduct was undertaken in violation of these rights. O'Brien v. City of Grand Rapids, 23 F.3d 990 (6th Cir.1994).
 
 
 32
 With regard to the first question, the right to be free from malicious prosecution is a clearly established right, although prior to January of 1994, this circuit analyzed the right as accruing under the Fourteenth rather than the Fourth Amendment. See Henry v. Metropolitan Sewer Dist., 922 F.2d 332 (6th Cir.1990), McMaster v. Cabinet for Human Resources, 824 F.2d 518, 522 (6th Cir.1987), and Cale v. Johnson, 861 F.2d 943, 949-950 (6th Cir.1988).
 
 
 33
 With regard to the second question, defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question. Wegener v. Covington, 933 F.2d 390, 392 (6th Cir.1991). Thereafter, the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' position would have clearly understood that he was under an affirmative duty to refrain from such conduct. Id.
 
 
 34
 When there is a genuine dispute as to whether or not the defendant engaged in conduct that, if committed, would constitute a violation of a clearly established right, summary judgment based on qualified immunity is inappropriate:
 
 
 35
 [S]ummary judgment would not be appropriate if there is a factual dispute (i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.
 
 
 36
 Poe v. Hayden, 853 F.2d 418, 426 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989) (citations omitted). Although Deputy Williams asserts that both the criminal citation and subsequent grand jury indictment were based on information as it was known to him, Danny Smith disputes this assertion and contends instead that Williams fabricated the statement of Al Harville in order to further his scheme to put Smith behind bars. In other words, plaintiff argues that Williams is not entitled to qualified immunity because a reasonable police officer would have known that he should not make a false statement in support of his efforts to prosecute a case.
 
 
 37
 In addition, Smith argues that Williams' decision to pursue the felony indictment for Wanton Endangerment provides further evidence of Williams' malicious intent in light of the fact that Smith left Harville at the side of the road (1) in accordance with Harville's wishes, (2) knowing that an ambulance had been called and was on its way, and (3) in order that he (Smith) might seek immediate treatment for his own injuries.
 
 
 38
 Assuming, arguendo, that Plaintiff's factual allegations prove to be true, a reasonable police officer in Deputy William's position would have known that his conduct was unlawful. Accordingly, defendant Greg Williams is not entitled to qualified immunity on plaintiff's claim for malicious prosecution.
 
 
 39
 D. Danny Smith's Fourth Amendment Claim for Unlawful Arrest
 
 
 40
 If a police officer obtains an arrest warrant through materially false statements made either knowingly or with reckless disregard for the truth, he may be sued under § 1983 for a Fourth Amendment violation. Hill v. McIntyre, 884 F.2d 271, 275 (6th Cir.1989) (citations omitted).
 
 
 41
 In this case, Deputy Williams' incident report indicates that he issued the misdemeanor citation to Smith based on Al Harville's statement to the effect that Smith was driving the Jeep at the time of the accident. Of course, plaintiff contends that Williams fabricated Harville's statement. In fact, plaintiff argues that if Harville had really implicated him as the driver, there would have been no need for Deputy Williams to question Officer Crawford, the accident reconstructionist, in order to determine who was driving the Jeep at the time of the accident.
 
 
 42
 On the foregoing facts, we believe that there is a genuine question of material fact as to whether or not Deputy Williams lied on the complaint form that was used to support the issuance of the citation. Assuming plaintiff's allegations to be true, a reasonable officer in Deputy William's position would have known that the Fourth Amendment bars an officer from issuing a citation based on a statement known to be materially false. Accordingly, Williams is not entitled to qualified immunity on plaintiff's false arrest claim.
 
 
 43
 E. Danny and Leona Smith's Fourth Amendment Claim for
 
 Unreasonable Seizure
 
 44
 Danny and Leona Smith allege that on several occasions from 1991 to 1993, Deputy Williams stopped their vehicles without justification. On some occasions, plaintiff Danny Smith was asked to perform a sobriety test before being permitted to leave. At other times, plaintiffs were asked to produce proof of insurance or auto ownership before being permitted to leave. On at least one occasion, Deputy Williams allegedly used an unauthorized police roadblock to stop Danny Smith.
 
 
 45
 A citizen's right to be free from traffic stops based on less than reasonable suspicion is a clearly established right. Terry v. Ohio, 392 U.S. 1 (1968). Moreover, as the Supreme Court recognized in Delaware v. Prouse, 440 U.S. 648 (1979), the police may not randomly stop a single automobile simply to check a driver's license or registration.[4]
 
 
 46
 In this case, a reasonable officer would have known that he could not stop plaintiffs' vehicle without reasonable suspicion, nor could he use an unauthorized checkpoint for purposes of detaining Danny Smith. Accordingly, Deputy Williams is not entitled to qualified immunity on this claim.
 
 
 47
 F. Supervisory Liability-Sheriff J.D. Williams
 
 
 48
 A supervisory employee cannot be held liable under § 1983 unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." Searcy v. City of Dayton, 38 F.3d 282 (6th Cir.1994), (quoting Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984)).
 
 
 49
 Plaintiffs' complaint fails to allege a constitutional violation by Sheriff Williams in his individual capacity inasmuch as it fails to allege any facts which, if true, would show that Sheriff J.D. Williams encouraged or participated in the decision to issue a citation to Danny Smith, the decision to indict Danny Smith, or the decision to stop Leona or Danny Smith. Instead, plaintiffs' complaint charges Sheriff Williams with negligently failing to take any action to stop Deputy Williams and negligently failing to provide adequate law enforcement training or supervision. Although Sheriff Williams' alleged failure to adequately train and/or discipline Greg Williams may be sufficient to establish municipal liability under Monell v. Dep't. of Social Services, 436 U.S. 658 (1978), it is not sufficient to establish individual liability. Johnson v. Hardin County, Ky., 908 F.2d 1280, 1285 (6th Cir.1990). Accordingly, plaintiffs' claims against Sheriff Williams in his individual capacity will be dismissed for failure to state a claim.
 
 IV
 
 50
 For the reasons set forth above, plaintiffs' Fifth, Eighth and Fourteenth Amendment claims against Deputy Greg Williams and Sheriff J.D. Williams will be dismissed for failing to allege a constitutional violation. In addition, plaintiffs' Fourth Amendment claims against Sheriff Williams in his individual capacity will be dismissed for failing to state a claim.
 
 
 51
 With regard to plaintiffs' Fourth Amendment claims against Deputy Greg Williams, the district court's decision, denying Williams' motion for summary judgment on the basis of qualified immunity, is affirmed.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Deputy Williams and Sheriff Williams are not related to one another
 
 
 [2]
 Harville was subsequently found to have seven broken ribs, a broken neck, a broken back, and facial injuries
 
 
 [3]
 Although the aforementioned affidavits were filed with the county clerk prior to commencement of the grand jury proceedings, Deputy Williams maintains that he was not aware of the affidavits when he testified before the grand jury. In fact, Deputy Williams asserts that he saw the affidavits for the first time approximately one week before his deposition in the instant case
 
 
 [4]
 Although the Supreme Court has upheld the use of suspicionless roadblocks to conduct sobriety or immigration checkpoints, Michigan Dept. of State Police v. Sitz, 496 U.S. 444 (1980), the Court has required that such checkpoints be established according to a neutral articulable standard and that the government interest in conducting the checkpoint outweigh the degree of intrusion. Id