91 F.3d 144
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jimmie SHELTON and Inetha Shelton, Plaintiffs-Appellants
v.
Chris WALLACE; Simon Leis, Sheriff; Commissioners of
Hamilton County; Bill Bridgeford; Dale Honnert;
Kurk Nordblum; Fred Ramono; and Joe
Staft, Defendants-Appellees.
 No. 95-3552.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1996.
 
 Before: KENNEDY and BOGGS, Circuit Judges; and RUSSELL, District Judge.[1]
 PER CURIAM.
 
 
 1
 Plaintiffs appeal a grant of summary judgment for defendants in their suit under 42 U.S.C. § 1983 for damages allegedly incurred when law enforcement officers pursuant to a court order temporarily closed their business on grounds that it was a public nuisance. For the following reasons, we AFFIRM.
 
 I.
 
 2
 Plaintiff Jimmie Shelton owns an establishment known as "Mann's Lounge," located in the Village of Lincoln Heights, Ohio. On October 20, 1992, the Hamilton County (Ohio) prosecutor filed a verified petition with the Court of Common Pleas seeking temporary and permanent injunctions to close Mann's Lounge under Ohio's nuisance abatement law, OHIO REV.CODE §§ 3767.01-.99, because of unabated drug trafficking on or near Mann's Lounge.
 
 
 3
 That same day, the court held an ex parte hearing on a motion for a temporary restraining order ("TRO") to close Mann's Lounge immediately. Upon the affidavit of Officer Chris Wallace, a Blue Ash (Ohio) police officer who headed the Drug Abuse Reduction Task Force ("DART"), attesting to the ongoing drug activity (JA at 307-08), the court issued a TRO. It provided, in part:
 
 
 4
 There being no showing that the nuisance has been abated, it is the further order of this court that the premises be closed and padlocked or boarded as deemed necessary by [DART] against its use for any purpose until final decision is rendered on the application for a preliminary and permanent injunction as required by [OHIO REV.CODE s] 3767.04.
 
 
 5
 It is further ordered that all personal property located in the premises shall be inventoried and that only necessary personal property located there shall be removed by the occupants prior to closure and under the direction of DART. DART may, however, remove and secure at an off-site location highly mobile and valuable property, such as automobiles, cash, jewelry, and electronic equipment, which may be at risk of theft during the pendency of this order.
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 DART shall serve this Order upon the person of [James L.] Shelton and shall effectuate the closing of said premises with forcible entry, based upon the affidavit of [Wallace], the precondition of non-consensual entry is waived pursuant to [OHIO REV.CODE s] 2933.231 due to the serious risk of physical harm to law enforcement officers or other authorized individuals in the execution of this order.
 
 
 9
 (JA at 27-28).
 
 
 10
 Later that day, several law enforcement officers entered Mann's Lounge and secured the premises, as authorized by the TRO. DART officers served the TRO and closed Mann's Lounge, boarding up windows and padlocking doors. Subsequently, a trial was held and the judge ultimately found that there was insufficient evidence to permanently close Mann's Lounge under OHIO REV.CODE §§ 3719.10 or 3767.04.
 
 
 11
 Jimmie Shelton and his daughter Inetha, who was present when officers entered Mann's Lounge, filed suit under 42 U.S.C. § 1983, naming as defendants the law enforcement officers who executed the TRO in their official capacities only, as well as the Commissioners of Hamilton County also in their official capacity.
 
 
 12
 Plaintiffs allege that the officers' execution of the TRO violated their Fourth Amendment rights because it constituted an unreasonable search and seizure. Plaintiffs further allege violations of their Fifth Amendment rights due to deprivations of liberty and property without due process of law. Finally, plaintiffs allege various state torts. In total, plaintiffs seek $4,150,000 in damages, as well as attorneys' fees and costs (JA at 9-21).
 
 
 13
 On cross-motions for summary judgment, the District Court held that the officers, in executing a facially valid court order, enjoyed absolute quasi-judicial immunity from liability. It granted summary judgment for the defendants and dismissed the state claims without prejudice (JA at 23-46). Plaintiffs appeal from this decision.
 
 II.
 
 14
 On appeal, plaintiffs advance the following arguments: (1) that the District Court erred in holding that defendants could avail themselves of quasi-judicial immunity because the defendants were being sued in their official capacities and not in their personal capacities; (2) that the municipalities, as the "true parties in interest," bear the burden of establishing the justification for any immunity--a burden they have failed to meet; and (3) that plaintiffs' Fourth and Fifth Amendment rights were indeed violated.
 
 
 15
 All of the defendants advance basically the same arguments: (1) that, in executing the TRO, the officers were acting as agents of the State of Ohio and are therefore not amenable to suit under § 1983; (2) that plaintiffs have failed to demonstrate that an unconstitutional policy or custom caused their injuries, as required to find municipalities and counties liable under § 1983; and (3) that, in simply executing a facially valid TRO, the officers are entitled to quasi-judicial immunity.
 
 
 16
 Because we agree with the defendants' second argument, we affirm the decision of the District Court without reaching the other issues.
 
 III.
 
 17
 We review a district court's decision to grant summary judgment de novo, "making all reasonable inferences in favor of the non-moving party to determine if a genuine issue of material fact indeed exists." EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate where, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Finally, a district court's decision will be affirmed if correct for any reason, including a reason not considered in its opinion. Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985) (per curiam).
 
 
 18
 Plaintiffs argue that the individual officers and county commissioners are liable in their official capacities for violating plaintiffs' constitutional rights in executing the TRO. Thus, as in all official capacity actions, plaintiffs are seeking damages not from the officers and commissioners individually, but from the entities for which they are agents. See Pusey v. City of Youngstown, 11 F.3d 652, 657 (6th Cir.1993), cert. denied, 114 S.Ct. 2742 (1994). Official-capacity lawsuits are, in all respects other than name, to be treated as lawsuits against the government entities. Kentucky v. Graham, 473 U.S. 159, 166 (1985).
 
 
 19
 Plaintiffs have failed to allege facts, let alone produce evidence, sufficient to create a genuine issue of material fact as to whether Hamilton County or the City of Blue Ash, by whom some of the officers were employed, deprived plaintiffs of constitutional rights through an official unconstitutional policy or custom, as required for county and municipal liability in § 1983 suits under Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny. Indeed they fail to even allege an unconstitutional policy.
 
 
 20
 Plaintiffs' basic complaint is that the TRO was unconstitutionally entered since Shelton did not receive prior notice. The municipal and county officers executed a facially valid TRO issued by a state court judge. The policy of enforcing state court orders, even if we assume that those orders may from time to time be erroneous, cannot be an unconstitutional policy. No other policy is suggested by counsel for plaintiffs and no other appears from the circumstances here.
 
 IV.
 
 21
 For the foregoing reasons, the decision of the District Court is hereby AFFIRMED.
 
 
 
 [1]
 The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation