**James D. GIBSON, Plaintiff,**

v.

**Latrice SAIN, et al., Defendants.**

No. 1:96–CV–219.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 15, 1997.

Douglas R. Mullkoff, Kessler & Mullkoff, Ann Arbor, MI, for James D. Gibson.

Michael S. Bogren, Plunkett & Cooney, PC, Kalamazoo, MI, for Latrice Sain.

Thomas M. Weibel, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, Gary T. Britton, Britton & Bossenbroek, PC, Muskegon, MI, for Eddie West, Malcolm Stevens, Dana Bryant, Dwight Vines, Melvin C.

Burns, Yvonne Hill, Tommie Watson, Cynthia Wheeler, Tommy R. Jones, Eddie Garner, Chief McMurray, Muskegon Heights Police Dept.

## OPINION

QUIST, District Judge.

Plaintiff, Dr. James A. Gibson (Gibson), filed this action alleging violations of 42 U.S.C. § 1983 against Defendants. This matter was previously before the Court on Defendant Samuel McMurray's (McMurray) motion to dismiss. The Court denied McMurray's motion, but required Gibson to file an Amended Complaint setting forth his claims in a more specific manner. Now before the Court is McMurray's motion to dismiss Gibson's amended complaint.

### Facts

This action arises out of Gibson's attendance of a Muskegon Heights School Board meeting on March 15, 1995. Gibson alleges that he became concerned about the Muskegon Heights School District after unacceptably low scores on the Michigan Education Assessment Program test were released in 1995. Due to his concern, he attended the March 15, 1995, meeting and began videotaping the proceedings. At some point during the meeting, Defendant Eddie West, Muskegon Heights School District Superintendent, and Defendant Dana Bryant, a Muskegon Heights School District administrator, demanded that Gibson discontinue videotaping the meeting. When Gibson refused to comply with West's and Bryant's request, West, or someone else from the school, called the Muskegon Heights Police Department (MHPD).[1]

Officer Latrice Sain (Sain) responded to the call and advised Gibson that he would be arrested if he did not leave the building.

1. Plaintiff alleges he had the right to videotape the meeting without the permission of the school board pursuant to Michigan's Open Meeting's Act, M.C.L. § 15.263(1), which provides:

 All meetings of a public body shall be open to the public and shall be held in a place available to he general public. All persons shall be permitted to attend any meeting except as otherwise provided in this act. The right of a person to attend a meeting of a

public body includes the right to tape-record, to videotape, to broadcast live on radio, and to telecast live on television the proceedings of a public body at a public meeting. The exercise of this right shall not be dependent upon the prior approval of the public body. However, a public body may establish reasonable rules and regulations in order to minimize the possibility of disrupting the meeting.

M.C.L. § 15.263(1).

Gibson did not leave the building and Officer Sain used force in an attempt to remove Gibson from the premises. Gibson alleges that he was choked unconscious and had to be treated at a hospital. Later that evening, another officer from the MHPD cited Gibson for trespass in violation of a Muskegon Heights ordinance. The next day, March 16, 1995, Gibson filed a complaint against Officer Sain with the police department.

The police department conducted an internal investigation into Gibson's complaint and found that Officer Sain's actions were proper. While the internal investigation was pending, Sain completed a warrant authorization form for Gibson's arrest and submitted it to a district judge for approval. The warrant authorization form contained a space for the city attorney to sign after reviewing it, which read: "Warrant Authorized on —— by ——, prosecuting official."[2] Per the MHPD's standard practice, the warrant request form was pre-signed by the city attorney but were not actually reviewed prior to submission to the district judge. Once the warrant was issued, Officer Sain entered it in the Law Enforcement Information Network.

On April 16, 1995, Gibson attended another school board meeting. MHPD was again called and Officer Sain supervised Gibson's arrest. Gibson was held in jail overnight. Later, all charges against Gibson were dismissed.

McMurray is Chief of the MHPD. Gibson alleges that McMurray authorized the MHPD's practice of using the pre-signed warrant request forms in violation of M.C.L. § 764.1(2), which had the effect of misleading the district judge which enabled Officer Sain to make the illegal arrest.

### Prior Motion To Dismiss

In his prior motion to dismiss, McMurray argued that the complaint did not state a claim against him for supervisory liability because it failed to allege that McMurray encouraged or directly participated in the acts giving rise to the alleged constitutional deprivation. In addition, McMurray argued that he is entitled to qualified immunity. At the conclusion of the hearing on February 5, 1997, the Court denied McMurray's motion to dismiss and ordered Gibson to file an amended complaint stating his claim against McMurray in more detail. Gibson filed an amended complaint as directed by the Court. McMurray has again moved to dismiss on the same grounds as the previous motion.

### Standard for Dismissal

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman [In re DeLorean Motor Co.]*, 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2 James W. Moore, *Moore's Federal Practice*, ¶ 12.34[1][b] (3d ed. 1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Dismissal is also proper if the complaint fails to allege an element necessary for relief or if an "affirmative defense or other bar to relief appears on the face of the complaint, such as the absolute immunity of the defendant...." 2 James W. Moore,

---

**2.** M.C.L. § 764.1(2) states in part:
A magistrate shall not issue a warrant for a minor offense unless an authorization in writing allowing the issuance of the warrant is filed with the magistrate and signed by the prosecuting attorney, or unless security for costs is filed with the magistrate....
M.C.L. § 764.1(2).

*Moore's Federal Practice,* ¶ 12.34[4][b] (3d ed. 1997).

> In practice, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."

*Allard,* 991 F.2d at 1240 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988) (emphasis in original)).

### Discussion

In his amended complaint, Gibson alleges that McMurray violated his procedural due process rights under the Fourteenth Amendment by authorizing his officers' use of warrant request forms which were pre-signed by the city attorney, in violation of M.C.L. § 764.1(2). McMurray argues that Gibson's claim against him fails on three grounds. First, McMurray contends that the amended complaint fails to allege facts which are sufficient to support a supervisory liability claim. Second, McMurray contends that Gibson's due process claim is deficient because it does not allege a deprivation of a federal constitutional right. Finally, McMurray contends that he is entitled to qualified immunity.

### A. Supervisory Liability

It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory of liability. *Rizzo v. Goode,* 423 U.S. 362, 375–76, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976). The right to direct or control employees is, by itself, insufficient to impose liability upon a defendant for the unconstitutional acts of subordinates. *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 727 (6th Cir.1996). To state a claim under Section 1983 against a defendant for supervisory liability, a plaintiff must allege a direct causal link between the acts of the subordinate and the supervisory defendant. *Hays v. Jefferson County,* 668 F.2d 869, 872 (6th Cir.1982) (citing *Rizzo,* 423 U.S. at 370–71, 96 S.Ct. at 603–04).

The parameters of supervisory liability have been consistently defined by the Sixth Circuit as follows:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*

*Taylor v. Michigan Dep't. of Corrections,* 69 F.3d 76, 81 (6th Cir.1995) (alteration in original) (quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984)). Under the Sixth Circuit's test, a supervisor may be held liable if he participated in or encouraged the specific instance of misconduct, or authorized or approved an unconstitutional act or procedure that resulted in a specific instance of misconduct by subordinate. *See Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir.1993) (noting that an official may be held liable for failure to supervise and control subordinates even though the official was not directly involved in the specific incident of misconduct).

McMurray argues that Gibson's claim against him is based solely upon respondeat superior liability and, therefore, fails to state a claim under Section 1983. McMurray contends that he cannot be held liable for Officer Sain's actions in arresting Gibson because the amended complaint does not allege that McMurray participated in, encouraged, or directed the arrest of Gibson, as required by *Bellamy.* In support of his argument, McMurray cites recent decisions by the Sixth Circuit in *Lillard, Copeland v. Machulis,* 57 F.3d 476 (6th Cir.1995), *Searcy v. City of Dayton,* 38 F.3d 282 (6th Cir.1994), and *Smith v. Williams,* No. 94–6306, 1996 WL 99329 (6th Cir.1996). The Sixth Circuit in each of those cases held that dismissal of the claims against the supervisory defendants was proper because there was no evidence that they encouraged or participated in the constitutional deprivations at issue.

McMurray is correct in arguing that the amended complaint does not allege that he personally participated in or encouraged the arrest of Gibson. In fact, nothing in the amended complaint suggests that McMurray

was even aware of Gibson's arrest. This omission does not require, however, that the claim against McMurray be dismissed. The scope of supervisory liability, as interpreted by the Sixth Circuit, is not limited to situations where the supervisor has actual knowledge of the specific constitutional deprivation. On the contrary, Section 1983 liability may be imposed on a supervisor regardless of knowledge of the specific incident of misconduct, where the supervisor fails to discharge a duty or adopts a policy that results in a constitutional violation. *See Taylor,* 69 F.3d at 81 (holding that issue of fact existed where prison warden was charged with abandoning duty of adopting and implementing transfer procedure identifying inmates at risk for sexual assault); *Hayes v. Vessey,* 777 F.2d 1149, 1154 (6th Cir.1985) (noting that supervisory officials are susceptible to liability under Section 1983 for failing to discharge supervisory duties).

In his amended complaint, Gibson alleges that McMurray "endorsed, encouraged, supervised and/or trained his officers to use the pre-signed warrant request forms when he knew or should have known that the use of pre-signed warrants violated or subverted Michigan statute, M.C.L. § 764.1(2), and would have had the effect of deceiving and misleading the judge to whom such a form was presented"; that McMurray failed to provide adequate supervision and training as evidenced by, among other things, his implicit authorization, approval, and acquiescence in his officers' use of pre-signed warrant request forms in violation of Michigan law; and that McMurray's policy, practice, or custom of permitting his officers to use the pre-signed warrant request forms violated Gibson's civil rights. (Amended complaint, ¶¶ 36, 51(a), and 53.) Gibson's claim is that McMurray authorized and endorsed the implementation of a policy that was illegal under Michigan law and that ultimately led to a violation of Gibson's constitutional rights.

Under the alleged set of facts, McMurray's approval of or authorization for use of pre-signed warrant forms provides the direct causal link required for supervisory liability. *See Rizzo,* 423 U.S. at 370–71, 96 S.Ct. at 603–04. While McMurray was not personally involved in Gibson's arrest, McMurray may still be held liable for approving of an illegal policy which served as the vehicle for a deprivation of Gibson's constitutional rights. *See Redman v. County of San Diego,* 942 F.2d 1435, 1446–47 (9th Cir.1991) (noting that a supervisor's adoption of an unconstitutional policy supports direct liability). *See also Taylor,* 69 F.3d at 81 (citing *Redman* with approval). Therefore, Gibson has met his minimal burden of alleging that McMurray "at least implicitly authorized, approved or knowingly acquiesced" in Officer Sain's offending conduct. *See Bellamy,* 729 F.2d at 421.

## B. Constitutional Violation

Chief McMurray next argues that dismissal is proper, regardless of supervisory liability, because Gibson has not alleged that McMurray deprived him of a constitutional right. McMurray argues that since the Fourth Amendment does not require the prosecutor's involvement in the probable cause determination, violation of the Michigan statute requiring prosecutorial review did not violate Gibson's federal constitutional rights. Gibson does not dispute McMurray's Fourth Amendment argument. Gibson argues, however, that a violation of a state-created procedural right that does not enjoy constitutional standing may support a due process claim under Section 1983.

Section 1983 provides redress for "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws." 42 U.S.C. § 1983. The statute provides a remedy for deprivations of federal constitutional and statutory rights; it does not cover official conduct that violates state law unless the violation also constitutes a deprivation of federal rights. *Huron Valley Hosp., Inc. v. City of Pontiac,* 887 F.2d 710, 714 (6th Cir.1989) (citing *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). As the Sixth Circuit in *Howard v. Grinage,* 82 F.3d 1343 (6th Cir.1996) has noted, many state-created rights are protected under the due process clause of the Fourteenth Amendment, even though such rights do not enjoy constitutional standing:

[T]he right to a hearing *prior* to the deprivation *is* of constitutional stature and does not depend upon the nature of the right violated. The rationale for granting procedural protection to an interest that does not rise to the level of a fundamental right lies at the very heart of our constitutional democracy: the prevention of arbitrary use of government power.

*Id.* at 1349 (emphasis in original). *See also Washington v. Starke,* 855 F.2d 346, 348 (6th Cir.1988) (noting that constitutional rights may arise out of state substantive laws and regulations and be protected by the due process clause of the Fourteenth Amendment).

 In determining whether a state law creates a liberty interest that is protected by the due process clause, the initial inquiry is whether the state has used "explicitly mandatory language in connection with requiring specific substantive predicates" to place substantive limitations on official discretion. *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). If the statute uses explicitly mandatory language and provides substantive predicates, the second inquiry is whether the state has mandated a specific outcome if all of the substantive predicates are met. *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir.1993). Procedural rights that do not require a particular substantive outcome are not a liberty interest protected by the Fourteenth Amendment, even if such rights are mandatory. *"Tony" L. and "Joey" L. v. Childers,* 71 F.3d 1182, 1185 (6th Cir.1995) (citing *Pusey,* 11 F.3d at 652), *cert. denied,* —— U.S. ——, 116 S.Ct. 1834, 134 L.Ed.2d 938 (1996).

 Gibson's procedural due process claim rests upon M.C.L. § 764.1(2), which prohibits a magistrate from issuing "a warrant for a minor offense until an order in writing allowing the issuance of the warrant is filed with the magistrate and signed by the prosecuting attorney." The statute uses explicitly mandatory language by providing that a warrant "shall not issue" until the prosecutor signs and files an order authorizing issuance of the warrant. M.C.L. § 764.1(2). Despite its substantive limitations on the magistrate's discretion to issue a warrant, the statute does not provide any specific result or outcome. Nor does the statute specify how the prosecutor's review affects the warrant process, although it may be assumed that such review is intended to protect innocent citizens from arbitrary use of power by law enforcement officers. Nonetheless, without a specific, mandated outcome, Gibson has no more than an expectation of process that is not protected under the Fourteenth Amendment. *See Childers,* 71 F.3d at 1185 (holding that state child protection statute which mandated investigation of reports of child abuse did not create protected liberty interest where no particular substantive outcome was mandated); *Pusey,* 11 F.3d at 656 (concluding that victim impact law which required notification to victim of details relating to prosecution of accused did not create protected liberty interest since statute did not specify how victim's statement must affect hearing or outcome of trial). Therefore, Gibson has failed to state a procedural due process claim against McMurray.

The Court's conclusion that Gibson has failed to state a procedural due process claim does not mandate dismissal, however, because the Court may dismiss the amended complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. In count I of his amended complaint, Gibson alleges that the acts of the Defendants, including McMurray, violated his rights as guaranteed by the Fourth Amendment, and that the Defendants lacked probable cause to believe that Gibson committed a crime. (Amended complaint, ¶¶ 42, 44.) Therefore, the Court must determine whether Gibson has stated a Fourth Amendment claim against McMurray.

 The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. In interpreting the Fourth Amendment's protections, the courts have consistently held that when feasible, a police officer should obtain a warrant to effect an arrest. *Gerstein v. Pugh,*

420 U.S. 103, 113, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975). The Sixth Circuit emphasized the necessity of the warrant requirement in *United States v. Bradley,* 922 F.2d 1290, 1295 (6th Cir.1991), overruled on other grounds by *United States v. McGlocklin,* 8 F.3d 1037, 1047 (6th Cir.1993):

> Even when the officers have probable cause to make an arrest but no exigent circumstances exist, " '[w]here, as here, officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search [or arrest] warrant,' " and "[p]olice officers may not, in their zeal to arrest an individual, ignore the fourth amendment's warrant requirement merely because it is inconvenient. . . ." The securing of a warrant is not a mere formality or technicality.

*Id.* at 1295 (first and third alterations in original) (citations omitted) (quoting *United States v. Morgan,* 743 F.2d 1158, 1162, 1164 (6th Cir.1984) (second alteration in original) (quoting *McDonald v. United States,* 335 U.S. 451, 454, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948))).

 The warrant requirement implements the Fourth Amendment's protections through review by "a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search." *Steagald v. United States,* 451 U.S. 204, 212, 101 S.Ct. 1642, 1648, 68 L.Ed.2d 38 (1981); *see also Gerstein,* 420 U.S. at 112, 95 S.Ct. at 862. A finding of probable cause by a neutral judicial officer must be supported by sufficient reliable information. *Illinois v. Gates,* 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983). A judicial officer may not base his finding of probable cause upon "a mere ratification of the bare conclusions of others." *Id.*

In *Hill v. McIntyre,* 884 F.2d 271 (6th Cir.1989), the Sixth Circuit held that a police officer who obtains an invalid warrant, by knowingly or recklessly making materially false statements in an affidavit, may be liable under Section 1983. *Id.* at 275 (citing *Donta v. Hooper,* 774 F.2d 716, 718 (6th Cir.1985) (per curiam)). The court in *Hill* noted that its holding was based upon the Supreme Court's decision in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which held that where an affidavit contains false statements made knowingly and intentionally or with reckless disregard for the truth, probable cause must be determined by setting aside the false information and reviewing the remaining contents of the affidavit, *id.* at 155–56, 98 S.Ct. at 2676. *Hill,* 884 F.2d at 275.

 In this case, Gibson alleges that Officer Sain violated his Fourth Amendment rights by using a pre-signed warrant request form, which violated M.C.L. § 764.1(2), to secure a warrant for Gibson's arrest. Gibson also alleges that the prosecutor did not review the warrant request form, as Officer Sain apparently represented to the district court by his use of the pre-signed form. To put it bluntly, Gibson alleges that Officer Sain lied to the court. Based upon these allegations, the Court concludes that Gibson has stated a claim under Section 1983 for violation of his Fourth Amendment rights.

McMurray argues that the Fourth Amendment does not require prosecutorial review in the warrant process, and therefore no Fourth Amendment violation could have resulted from the lack of actual review by the prosecutor. However, the Court believes that there is a distinction between an instance where the prosecutor fails to review the request form and does not sign the form, and an instance where the prosecutor's signature is pre-signed without actual review by the prosecutor. In the first instance, the reviewing judicial officer would have no reason to assume that probable cause has been reviewed and approved by another person trained in the law. In the latter instance, it is possible that the judicial officer may limit his review by giving substantial deference to the prosecutor's previous, albeit fictitious, determination that the request is supported by probable cause. The judicial officer could reasonably expect that the prosecutor would have checked to make sure that the person subject to possible arrest was not being arrested for exercising statutory or constitutional rights—videotaping a public meeting,

**566**

for example.[3]

Under the statute at issue in this case, the prosecuting attorney is considered a quasi-judicial officer and plays an investigative role in the warrant process. *Bloss v. Williams,* 15 Mich.App. 228, 233, 166 N.W.2d 520, 523 (1968). The requirement that the prosecutor review and approve the warrant request creates the danger that the neutral judicial officer will rely to a substantial extent upon the prosecutor's investigation and approval. This danger, and the consequent possibility of a Fourth Amendment violation, is heightened where the police officer falsely represents that the prosecutor has reviewed the request.

### C. Qualified Immunity

██ McMurray's final argument is that he is entitled to qualified immunity. The determination of a qualified immunity defense involves a two-step inquiry. First, the Court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right; and second, the Court must determine whether " 'a reasonable [official] in the defendant's position should have known that the conduct at issue was undertaken in violation of that right.' " *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996) (quoting *Pray v. City of Sandusky,* 49 F.3d 1154, 1158 (6th Cir.1995)).

██ The Court has already determined that Gibson has stated a Fourth Amendment claim M.C.L. § 764.1(2). Therefore, the Court must determine whether a reasonable person in McMurray's position should have known that his conduct violated Gibson's clearly established constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For purposes of qualified immunity under Section 1983, " 'the law must be clear in regard to the official's particular actions in the particular situation.' " *Saylor v. Board of Educ.,* 118 F.3d 507, 515 (6th Cir.1997) (quoting *Long v. Norris,* 929 F.2d 1111, 1114 (6th Cir.1991)). "[T]he law must have earlier

been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

██ In this case, the Court has no difficulty in concluding that Officer Sain, by submitting a warrant request form to the district court judge which, on its face falsely indicated that it had been reviewed by the prosecutor. The Sixth Circuit's decisions in *Hill* and *Donta,* and the Supreme Court's decision in *Franks,* make clear that a police officer who knowingly furnishes false information to a judicial officer in support of a warrant request may be held liable under Section 1983. Therefore, McMurray is not entitled to qualified immunity on his motion to dismiss.

### *Conclusion*

For the foregoing reasons, Defendant McMurray's motion to dismiss will be denied.

---

**3.** This Court recognizes that the warrant was issued for resisting arrest for trespass. There may not have been a trespass, but even so, that does not necessarily give a person a right to resist arrest. This distinction has not been presented to this Court and, therefore, is not addressed at this time.