**Ethel L. PUSEY, Plaintiff–Appellant,**

v.

**CITY OF YOUNGSTOWN; Maureen Cronin, Defendants–Appellees.**

No. 92–4185.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 15, 1993.

Decided Dec. 15, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Feb. 3, 1994.

defendant's Fourth Amendment argument.

**654**

Percy Squire (briefed), Drew H. Campbell (argued), Bricker & Eckler, Columbus, OH, for plaintiff-appellant.

William Scott Fowler, Comstock, Springer & Wilson, Youngstown, OH, Cheryl L. Waite (argued and briefed), Edwin Romero, Maureen A. Cronin, Youngstown, OH, for defendants-appellees.

Before: KENNEDY, MILBURN, and GUY, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff Ethel L. Pusey appeals the District Court's summary judgment dismissing plaintiff's claims in this 42 U.S.C. § 1983 action against an assistant prosecutor in her personal and official capacities, and against the City of Youngstown for her alleged failure to comply with Ohio's victim impact law. For the reasons stated below, we affirm.

**I.**

Plaintiff filed an action against defendant Maureen Cronin, a City of Youngstown prosecutor, and the City of Youngstown, alleging that the defendants deprived her of her First

Amendment right to free speech and her constitutional right to access to the courts. Plaintiff's claims arise out of Cronin's handling of the prosecution of one Eric Bator for the death of plaintiff's son, Derrell Pusey. Bator was initially charged with involuntary manslaughter.

Ohio Rev.Code § 2937.081 requires the prosecutor assigned to certain charged crimes, including involuntary manslaughter, to provide the victim, or the victim's next of kin, with notice of the date, time and place of the trial pertaining to the particular offense or if the prosecution is resolved without trial, the date, time and place at which a guilty plea will be entered.[1]

On September 27, 1991, at a status conference on the case, Cronin entered a nolle prosequi to the charge under Ohio Rev.Code § 2903.04 (involuntary manslaughter) and charged Bator under section 2903.05 (negligent homicide). Bator pleaded no contest to the reduced charge and the plea was accepted by the municipal court. The court scheduled sentencing for December 13, 1991. Plaintiff was not present at the September 27, 1991, hearing.

Plaintiff and her counsel claim Cronin deprived plaintiff of her constitutional rights by failing to notify her that the charge would be reduced at the September 27, 1991, hearing. Cronin, in her affidavit in support of her motion for summary judgment, states that Cronin met with plaintiff on September 25, 1991, and advised plaintiff that there would be a status conference with the judge on September 27, 1991, at which time the charges might be reduced.[2] Her affidavit also states that she orally advised plaintiff's attorney of the status conference.

---

1. Section 2937.081(B) provides,

 a prosecutor who is assigned for prosecution a criminal case that includes one or more charges of ... [involuntary manslaughter] ... shall notify the victim of each offense or count charged of the date, time, and place of the trial pertaining to the particular offense or count, or if the particular offense or count charged is resolved without trial, the date, time, and place at which the prosecutor will enter a nolle prosequi pertaining to the offense or count, at which a plea of guilty or no contest pertaining

 to the offense or count will be entered, or at which the final disposition of the offense or count otherwise will be made. The notification required by this division shall be provided in accordance with division (E) of this section.

 Subdivision E provides that the prosecutor may give notification either by mail or orally. *See* Ohio Rev.Code § 2937.081(E).

2. In fact, plaintiff has failed to produce admissible evidence to rebut the statements in Cronin's affidavit that she notified plaintiff of the September 27, 1991, hearing.

Ohio Rev.Code § 2937.081 does not require a prosecutor to provide notice when the crime charged is negligent homicide. Cronin nonetheless notified plaintiff that Bator's sentencing hearing on the negligent homicide charge was set for December 13, 1991. Plaintiff attended and spoke at this hearing but the municipal court refused to allow her attorney to speak for her or to allow her to read a motion to vacate Bator's no contest plea to the reduced charge.[3] Plaintiff argues that Cronin had a duty as an officer of the court to inform the trial judge that the judge's actions were in violation of plaintiff's statutory and constitutional rights.

As a result of the charge reduction and sentencing hearing, plaintiff filed a 42 U.S.C. § 1983 claim against Cronin and the City. Plaintiff alleged that Cronin's failure to notify her that the charges might be reduced, her failure to inform the judge of his obligations to crime victims at the reduction hearing, and Cronin's failure to advise the judge at sentencing that plaintiff had the right to counsel in connection with her exercise of rights under the Ohio victim impact laws, deprived her of her First Amendment right to free speech and denied her access to the courts. Defendants moved for summary judgment on all claims which the District Court granted. This timely appeal followed.

## II.

This Court reviews a District Court's grant of summary judgment *de novo*, "making all reasonable inferences in favor of the nonmoving party to determine if a genuine issue of material fact" exists. *EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Viewing the evidence in the light most favorable to the nonmoving party, this Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## III.

As an initial matter, we note that plaintiff cannot complain about Cronin's actions with regard to the sentencing hearing. At that time, Bator had pled guilty to negligent homicide. Ohio Revised Code § 2937.-081(B) does not require that the prosecutor give notice to the victim or the victim's family when the charge involved is negligent homicide. Thus, any claim that her rights were violated with regard to the sentencing hearing is without merit.

Additionally, plaintiff alleges that the prosecutor committed a constitutional tort by failing to advise the judge at the sentencing hearing that plaintiff was entitled to assistance of counsel. There is absolutely no basis in law for plaintiff to claim that the prosecutor has deprived her of her constitutional rights because of a failure on the part of a prosecutor to correct the trial judge. Plaintiff does not point to any constitutional or statutory duty of prosecutors to tell the judge before whom they appear that the judge is wrong in his or her ruling.

Finally, plaintiff claims that the prosecutor violated plaintiff's constitutional rights by failing to inform the judge of his obligations to crime victims at the charge reduction

---

3. Under Ohio Revised Code § 2943.041(A), if a person is charged with certain crimes (including involuntary manslaughter, but not including negligent homicide), and that charge is resolved in any way except for trial,

> the court shall determine whether the victim of the act that was the basis of the charge, or a representative member of the victim's family if the victim died as a result of that act, is present at the hearing or proceeding at which the charge is resolved. If the court determines

that ... a representative member of the victim's family is present ... [the court] shall inform the ... representative family member that he is entitled to make a statement relative to the victimization and, if applicable, the sentencing of the offender, and the court, subject to any reasonable terms and conditions it imposes, shall permit the victim or representative family member, if he so desires, personally to make such a statement.

hearing. Again, there is no constitutional or other duty on a prosecutor to correct the trial judge.

## IV.

We turn then to plaintiff's claim that Cronin violated plaintiff's constitutional rights by failing to tell her that the charge might be reduced at the September 27, 1991 hearing. Under 42 U.S.C. § 1983, plaintiff must establish that Cronin deprived plaintiff of her federal statutory or constitutional rights under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). The parties do not dispute that Cronin acted under color of state law. The only question is whether plaintiff was deprived of a federal right. Plaintiff argues Cronin has deprived her of her constitutional substantive due process rights and her procedural due process rights. These alleged rights include her liberty interest in free access to the courts and her First Amendment right to freedom of expression.

### A. *Procedural Due Process*

▮ "We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted). Liberty interests derive from both the Due Process Clause itself and the laws of the states. *Id.* Plaintiff clearly rests the establishment of her liberty interests on Ohio law. Initially, we must determine whether the Ohio crime victim's statute establishes a federally enforceable procedural right. To determine if state law establishes a protected liberty interest we must closely examine the state's statutes and regulations. To establish a liberty interest, the state law must use " 'explicitly mandatory language,' in connection with the establishment of 'specified substantive predicates' to limit discretion" of those to whom the statutory duty applies. *Id.* at 463, 109 S.Ct. at 1910. "[T]he most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decisionmaking, and, further, by *mandating the outcome to be reached upon a finding that the relevant criteria have been met.*" *Id.* at 462, 109 S.Ct. at 1909 (emphasis added).

Ohio Rev. Code § 2937.081 requires the prosecutor assigned to certain charged crimes, including involuntary manslaughter, to provide the victim, or the victim's next of kin, with notice of the date, time and place of the trial pertaining to the particular offense or if the prosecution is resolved without trial, the date, time and place at which a guilty plea will be entered. This statute extends procedural rights, notice, to crime victims but fails "to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983). "[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at 250, n. 12, 103 S.Ct. at 1748 n. 12. The Ohio victim impact law does not create a liberty interest here because it only provides that the victim has the right to be notified. The statute does not specify how the victim's statement must affect the hearing nor does it require a particular outcome based on what the victim has said. *See also Dix v. County of Shasta,* 963 F.2d 1296, 1300 (9th Cir.1992). Thus, plaintiff has failed to establish that Ohio Rev. Code § 2937.081 creates a constitutionally protected liberty interest.

### B. *Substantive Due Process*

Plaintiff also argues that she suffered a deprivation of her substantive due process rights by Cronin's failure to notify her that the charge might be reduced at the September 27, 1991 hearing. The Sixth Circuit has recognized that substantive due process claims arise in a variety of contexts. Deprivations of substantive due process can be divided into "(1) deprivations of a particular constitutional guarantee and (2) actions that 'shock the conscience.' " *Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1474 (6th Cir.1993) (citing *Braley*

*v. City of Pontiac,* 906 F.2d 220, 224–225 (6th Cir.1990)).

Plaintiff argues that Cronin's failure to notify her that the charge might be reduced subjected her to governmental action which "shocks the conscience." However, the Sixth Circuit has stated that use of the "shock the conscience" test is problematic in areas other than excessive force. *Braley,* 906 F.2d at 226. This case does not concern physical force, and we see nothing shocking in the prosecutor's conduct here.

Plaintiff next argues that even if Cronin's actions did not shock the conscience, her failure to notify was arbitrary and capricious in violation of her liberty and expressive interests. We conclude that plaintiff's failure to notify was neither arbitrary nor capricious.

█ Finally, plaintiff argues that Cronin's failure to notify plaintiff that the charge might be reduced deprived her of her right to freedom of expression and access to the courts as protected by substantive due process. Plaintiff argues Cronin deprived her of her constitutional rights by failing to notify her because exercise of plaintiff's constitutional rights necessarily hinged on notification of the hearing. Even assuming that an expressive right or right to access to the courts exists in this context, we conclude that Cronin's failure to notify plaintiff did not deprive plaintiff of a particular constitutional guarantee. Cronin's failure to notify plaintiff did not prohibit her from attending the hearing or speaking at the hearing. Thus, we conclude that Cronin's failure to notify plaintiff did not deprive her of any substantive due process rights.

Cronin did not deprive plaintiff of her procedural or substantive due process rights and therefore we affirm the District Court's order granting summary judgment to Cronin and the City. Although our conclusion that plaintiff was not deprived of any federal statutory or constitutional rights requires a dismissal of her section 1983 action, we will nevertheless address alternative bases for denying liability.

## V.

Initially, we address plaintiff's argument that Cronin is liable under 42 U.S.C. § 1983 in both her official and personal capacities.

### A. *Official Capacity*

In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent. The Supreme Court has concluded that, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

█ The District Court granted summary judgment dismissing all claims against Cronin in her official capacity. The District Court concluded that Cronin was a state employee and suits against state officers acting in their official capacities are not cognizable under section 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2311–12, 105 L.Ed.2d 45 (1989). The District Court reasoned that Cronin was a state employee because she is an officer of the municipal court which is an arm of state government. However, both parties concede on appeal that the District Court erred when it concluded that Cronin was a state employee. Rather, as both parties noted on appeal, Cronin is an employee of the City of Youngstown.

While we agree with the parties that Cronin is employed by the City of Youngstown, we nevertheless conclude that plaintiff's suit must fail as Cronin acted on behalf of the state when she was prosecuting state criminal charges and reduced the charge at the September 27, 1991 hearing. City prosecutors are responsible for prosecuting state criminal charges. *See* Ohio Rev. Code §§ 1901.34(C), 309.08. Clearly, state criminal laws and state victim impact laws represent the policy of the state. Thus, a city official pursues her duties as a state agent when enforcing state law or policy. *Cf. Scott v. O'Grady,* 975 F.2d 366 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993); *Echols v. Parker,* 909 F.2d 795 (5th Cir.1990). Because Cronin

acts as a state agent when prosecuting state criminal charges, the suit against Cronin in her official capacity is to be treated as a suit against the state. Again, a suit against a state is not cognizable under 42 U.S.C. § 1983. *Will,* 491 U.S. at 71, 109 S.Ct. at 2311–12.[4]

Although the District Court granted summary judgment for Cronin in this official capacity action for other reasons, we affirm the District Court's order because Cronin is entitled to summary judgment on other grounds. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.,* 772 F.2d 214, 216 (6th Cir.1985) (per curiam).

### B. *Personal Capacity*

 Plaintiff also alleged a section 1983 action against Cronin in her personal capacity. However, an official sued in her personal capacity may assert the common law defenses of absolute and qualified immunity. Indeed, the District Court dismissed the claims against Cronin in her personal capacity, ruling that Cronin was absolutely immune from suit.

 As an initial matter, we note that plaintiff appeared to concede at oral argument that Cronin is entitled to absolute immunity. However, we address this issue to make clear that prosecutors are entitled to absolute immunity for a failure to notify victims under a victim impact law.

To determine whether a prosecutor is entitled to absolute or qualified immunity for a particular act, we must examine the "nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988). In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Court held that prosecutors sued in their personal capacity under section 1983 are absolutely immune for their conduct in "initiating a prosecution and in presenting

the State's case." *Id.* at 431, 96 S.Ct. at 995. The Court reasoned that the prosecutors' "activities were intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 995. The Court expressly reserved determination of absolute immunity for a prosecutor when she acts in the role of an administrator or investigative officer rather than that of an advocate. *Id.* at 431, 96 S.Ct. at 995. More recently, in *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Court concluded that a prosecutor is not entitled to absolute immunity when acting as an administrator or investigator, for example, when a prosecutor gives legal advice to police. *See also Buckley v. Fitzsimmons,* —— U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Plaintiff argues that the prosecutor is not entitled to absolute immunity for failing to give notice to her because the duty to notify was an investigative or administrative duty. Sixth Circuit precedent has established that "the critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process." *Joseph v. Patterson,* 795 F.2d 549, 554 (6th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987).

We conclude that the prosecutor's failure to notify plaintiff of the September 27, 1991 hearing, where Bator's charge was reduced and he entered a guilty plea, is within the prosecutor's function as an advocate for the state as it is intimately associated with the judicial phase of the criminal process. The court hearing where the charge was reduced and a guilty plea was entered involved a judicial act. Furthermore, the prosecutor's determination to notify or failure to notify is intimately associated with the hearing and is simply a litigation-related duty. Giving notice to witnesses, victims or defendants is certainly one of those core prosecutorial functions which is protected by absolute im-

---

4. Plaintiff argues that even if a damages action against Cronin in her official capacity is prohibited by the Eleventh Amendment, prospective relief is not prohibited. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Plaintiff therefore seeks relief requiring Cronin to conform with constitutional standards. While the

Eleventh Amendment does not bar such a suit, prospective relief is not available because we have concluded that Cronin did not violate any constitutional guarantees. Further, plaintiff has failed to allege that she is likely to be in this situation again.

munity. Indeed, plaintiff's desire to attend the reduction hearing arose because she wanted to object to the plea arrangement and persuade the prosecutor and the judge to bind defendant Bator over to the grand jury. Her very desire in attending the hearing illustrates that the prosecutor's duty, as related to giving her notification for the reduction hearing, involved duties where the prosecutor functioned as an advocate of the state and duties which are intimately associated with the criminal process.

Thus, the District Court correctly determined that Cronin is entitled to absolute immunity from suit in her personal capacity and we affirm the order dismissing all claims against Cronin in her personal capacity.

## VI.

We next address plaintiff's section 1983 claim against the City of Youngstown. Plaintiff argues "that the City caused the plaintiff's constitutional tort through inadequate training of its prosecutor and through its acquiescence in the policy or custom which deprived the plaintiff of her rights." We conclude that the plaintiff's action against the City has no merit.

After a review of plaintiff's complaint, the District Court concluded that plaintiff did not raise any cognizable claim against the City except one which derives from an allegation of wrongdoing on the part of Cronin. The District Court then granted the City's summary judgment motion to dismiss all claims concluding that the City could not be liable for any of Cronin's actions because Cronin was not a city employee. The District Court reasoned that Cronin was a municipal court employee and that the municipal court was an arm of the state courts. Therefore, Cronin acted on behalf of the state, not the City of Youngstown. Thus, the District Court reasoned that the City could not be responsible for Cronin's actions. On appeal, both parties concede that the District Court erred when it concluded that Cronin is not an employee of the municipality. However, this Court may affirm the District Court's order granting summary judgment for the City if the City is entitled to summary·judgment on

other grounds. *Russ' Kwik Car Wash,* 772 F.2d at 216 (citations omitted).

 To the extent that plaintiff's claim against the City derives from an allegation of wrongdoing on the part of Cronin, it is barred under *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A municipality is not liable under 42 U.S.C. § 1983 for its employees' acts on a respondeat superior theory. Additionally, as stated, Cronin was acting on behalf of the state when she prosecuted state criminal charges ·and therefore her actions in prosecuting the charge, at that point, could not be attributed to the City. Municipal liability arises under section 1983 for unconstitutional policies or customs. *Id.* Plaintiff failed to allege any unconstitutional City policy or custom in her complaint.

 In appropriate circumstances, a single act may rise to the level of policy or custom. With regard to policy, a single act can constitute municipal policy "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Plaintiff does not suggest that Cronin possessed final authority to establish a municipal policy of failing to notify victims of upcoming trials or dispositions. In fact, the City Law Director is the head of the Law Department and Cronin reports to the Director. Additionally, the Director has "final supervisory and policy-making authority with respect to the Law Department."

Plaintiff did argue in her brief in opposition to the City's motion for summary judgment, that Cronin's failure to notify plaintiff may have been pursuant to an unconstitutional custom of the City. A course of conduct constitutes a custom when "such practices of state officials [are] so permanent and well-settled" as to constitute law. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. The plaintiff suggested no facts tó support a custom of failing to notify victims. Cronin's affidavit, which was unrefuted, states that she told plaintiff before the September 27, 1991 hearing that charges against Bator might be reduced. Under these circumstances, we see

no reason to permit plaintiff to amend at this time to allege a violation of a custom or policy.

Plaintiff also contends that the City violated the plaintiff's rights by failing to provide adequate training for city attorneys, as manifested by Cronin's failure to notify plaintiff of the reduction hearing. Once again, Cronin's conduct indicates awareness of her statutory duties. Again, we see no basis to permit an amendment to allege the contrary.

## VII.

For the reasons stated above, we AFFIRM the District Court's order granting summary judgment for the defendants.