FILED
United States Court of Appeals
Tenth Circuit

April 9, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIAM B. ELLIOTT; TOMMY J.
EVARO; ANDRIA J. HERNANDEZ,

Plaintiffs - Apellants,

v.

SUSANA MARTINEZ, District
Attorney for the Third Judicial District
of New Mexico,

Defendant - Appellee.

No. 10-2213

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:10-CV-00385-JAP-ACT)**

---

David A. Streubel, Streubel Kochersberger Mortimer LLC, Albuquerque, New Mexico, for Plaintiffs - Appellants.

Cody R. Rogers (T.A. Sandenaw, Jr., with him on the brief), Sandenaw Law Firm, P.C., Las Cruces, New Mexico, for Defendants - Appellees.

---

Before **HARTZ**, **EBEL**, and **HOLMES**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Plaintiffs William B. Elliott, Tommy J. Evaro, and Andria J. Hernandez

were all targets of investigations by the Doña Ana County grand jury. Under

New Mexico law they were entitled to target notices that advised them of the right to testify before the grand jury. But the notices they received may not have complied with state law. They filed a civil-rights action under 42 U.S.C. § 1983 in the United States District Court for the District of New Mexico, alleging that District Attorney Susana Martinez violated their due-process rights under the Fourteenth Amendment to the United States Constitution. The district court granted the District Attorney's motion to dismiss on the ground that the New Mexico statute did not establish a liberty interest protected by the Fourteenth Amendment. Plaintiffs appeal. We have jurisdiction under 28 U.S.C. § 1291 and affirm because a statutory right to particular procedures is not a liberty interest under the Fourteenth Amendment.

## I. BACKGROUND

Under New Mexico law a target of a grand-jury investigation is entitled to notice that he or she is a target unless a district judge finds that notification may result in flight, obstruction of justice, or danger to another person. *See* N.M. Stat. Ann. § 31-6-11(C) (2003). The notice must describe the alleged crime being investigated, the target's right to remain silent, and the target's right to counsel. *Id.* at § 31-6-11(C)(1), (2), (5), (6).[1] It must also advise the target of the right to

_____

[1] In full, the relevant subsection reads:

A district attorney shall use reasonable diligence to notify a person in writing that the person is the target of a grand jury investigation.

(continued...)

-2-

testify before the grand jury on a date no earlier than four days in the future if the target is in custody (and ten days if the target is not). *See id.* § 31-6-11(C)(3), (4).

Plaintiffs were in custody at the Doña Ana County Detention Center when they received target notices. They allege that these notices were untimely. Elliott alleges that he received notice on February 24, 2010, at 10:38 a.m for a grand-jury presentation on February 25 at 8:30 a.m. Evaro and Hernandez allege that

---

[1](...continued)
Unless the district judge presiding over the grand jury determines by clear and convincing evidence that providing notification may result in flight by the target, result in obstruction of justice or pose a danger to another person, the target of a grand jury investigation shall be notified in writing of the following information:
> (1) that he is the target of an investigation;
> (2) the nature of the alleged crime being investigated and the date of the alleged crime and any applicable statutory citations;
> (3) the target's right to testify no earlier than four days after receiving the target notice if he is in custody, unless for good cause the presiding judge orders a different time period or the target agrees to testify sooner;
> (4) the target's right to testify no earlier than ten days after receiving target notice if he is not in custody, unless for good cause the presiding judge orders a different time period or the target agrees to testify sooner;
> (5) the target's right to choose to remain silent; and
> (6) the target's right to assistance of counsel during the grand jury investigation.

N.M. Stat. Ann. § 31-6-11(C) (2003).

they received notices on March 15, 2010, at 2:10 p.m. for grand-jury presentations on March 18 at 8:30 a.m.

Plaintiffs' amended complaint asserted a procedural-due-process claim, stating that violations of the statutory notice requirement denied them liberty interests protected by the Fourteenth Amendment. The District Attorney moved to dismiss the complaint for failure to state a claim. Plaintiffs responded that the grand-jury statute creates a liberty interest "because it limits a district attorney's official discretion and mandates that if an individual is the target of [a] grand jury, a particular outcome in the form of the required notice must follow." Aplt. App. at 29.

The district court granted the motion to dismiss. It said that the critical question was whether the notice statute created a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, and that the answer to this question ordinarily depends on whether the statute places "'substantive limitations on official discretion'" by establishing "'"substantive predicates" to govern official decision-making, and, further by mandating the outcome to be reached upon a finding that the relevant criteria have been met.'" *Id.* at 52, Mem. Op. & Order Granting Def.'s Mot. to Dismiss Pl.'s Compl. (Order) at 3, No. 10-385 JP/ACT (D.N.M. Sept. 9, 2010) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989)). The court held, however, that even though the statute created an expectation that Plaintiffs would receive four days' notice,

"a mere expectation of process" did not establish a protected liberty interest. *Id.* at 55, Order at 6. It relied in part on decisions by the Sixth and Ninth Circuits holding that notice requirements in state statutes do not create substantive interests subject to constitutional procedural protections. *See James v. Rowlands*, 606 F.3d 646, 649, 656 (9th Cir. 2010) (plaintiff had no procedural-due-process claim when officials violated a state statute requiring them to notify him when they took his daughter into temporary custody); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993) (state statute created no liberty interest when it required the prosecutor to notify a crime victim of the time and place at which a guilty plea concerning the crime would be entered).

## II.    DISCUSSION

The Due Process Clause states, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. An alleged violation of the procedural due process required by this clause prompts a two-step inquiry: (1) whether the plaintiff has shown the deprivation of an interest in "life, liberty, or property" and (2) whether the procedures followed by the government in depriving the plaintiff of that interest comported with "due process of law." *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). The first step is the focus of this appeal.

A protected interest in liberty or property may have its source in either federal or state law. *See Thompson,* 490 U.S. at 460 ("Protected liberty interests

may arise from two sources—the Due Process Clause itself and the laws of the States." (internal quotation marks omitted)); *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972) (Property interests are not created by the Constitution but are created and defined by "an independent source such as state law."). The district court was correct in saying that a state-created interest is not protected by the procedural component of the Due Process Clause unless the interest is an entitlement—that is, unless the asserted right to property or liberty is *mandated* by state law when specified substantive predicates exist. *See Roth*, 408 U.S. at 577; *Thompson*, 490 U.S. at 460, 462. For example, if state law provides that a prison inmate is entitled to be released on parole when the inmate has not violated prison regulations for 10 years, then that interest in being released is a protected liberty interest: release is mandated when the substantive predicate (no violations for 10 years) is satisfied. The Due Process Clause would then require the state to provide a prisoner adequate procedures—say, notice and a hearing before prison officials—before it could hold him beyond 10 years on the ground that he had violated a prison regulation.[2] But the liberty interest in being released on parole would not qualify for due-process protection if there were no substantive

_____

[2] We note that even when state law establishes the protected interest, federal law (not state law) governs whether the procedures for depriving someone of the protected interest are constitutionally adequate. *See Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003) ("[O]nce the property right is established, it is purely a matter of federal constitutional law whether the procedure afforded was adequate."); *James*, 606 F.3d at 657 (same for liberty interest).

predicates that *mandated* release, as when "there is no set of facts which, if shown, mandate a decision favorable to the [inmate]." *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 10 (1979).

Plaintiffs argue that the grand-jury statute creates an entitlement because it mandates notice to the grand-jury target when specified predicates (that notice will not result in flight, obstruction of justice, or danger to another person) are satisfied. But even if notice is an entitlement under state law, Plaintiffs have failed to state a due-process claim. That is because an entitlement is protected by the Due Process Clause only if it is an interest in life, liberty, or property; and not all entitlements are such interests. For example, often a prisoner's entitlements are not liberty interests. A state law may mandate when a prisoner can be segregated from the general prison population or otherwise subject to special conditions of confinement. But the Due Process Clause imposes no procedural constraints on a prison official in ordering special conditions of confinement unless the official "imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Any lesser hardship does not rise to the level of a deprivation of liberty for one whose freedom has already been lost through conviction of a crime. *See id.* at 484–86.

What constitutes a liberty or property interest within the meaning of the Fourteenth Amendment is not always easy to determine. The concepts should not

be given a narrow construction. "'Liberty' and 'property' are broad and majestic terms . . . [that] relate to the whole domain of social and economic fact." *Roth*, 408 U.S. at 571. But they are not unlimited in scope. In particular, the protected interests are substantive rights, not rights to procedure. As the Supreme Court wrote in *Olim v. Wakinekona*, 461 U.S. 238 (1983), "[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at 250 n.12. "Process is not an end in itself," it explained. *Id.* at 250. "Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Id.* Thus, "an entitlement to nothing but procedure cannot be the basis for a liberty or property interest." *Stein v. Disciplinary Bd. of Sup. Ct. of N.M.*, 520 F.3d 1183, 1192 (10th Cir. 2008) (brackets and internal quotation marks omitted).

The line between substance and procedure is somewhat blurry. In this case, however, there is no question that the state statute creates a procedural right. As the Supreme Court has repeatedly said, "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998). What Plaintiffs describe as a liberty interest is precisely that core of procedure: a right to notice from the grand jury and an opportunity to be heard by it. Plaintiffs' claim that the statute creates a liberty interest protected by constitutional procedural due process reflects a confusion between what is a liberty interest and what procedures the government must follow before it can

restrict or deny that interest. They "collaps[e] the distinction between [the interest] protected and the process that protects it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 772 (2005) (Souter, J., concurring).

We add one further observation to make clear that our conclusion is not the result of some inadequacy in Plaintiffs' briefing or a peculiarity of the state notice statute. What if state law required dismissal of the indictment and release from custody of a target who had been indicted without being provided the statutorily required notice? Is not release from custody a liberty interest? And would not that liberty interest be an entitlement protected by the Due Process Clause because it was mandated when required notice was not given? No. To be protected by procedural due process, an interest must be guaranteed by state law when specified *substantive* predicates exist. "[A] State creates a protected liberty interest by placing *substantive* limitations on official discretion." *Olim*, 461 U.S. at 249 (emphasis added). The requirement that notice be given is not a substantive limitation, but a procedural one. Again, although the line between substance and procedure is not always clear, it is clear here. Notice is a matter of procedure, not substance. Procedural failures often mandate particular results, results that could easily be categorized as affecting property or liberty. To say that mandating such a consequence creates a liberty or property interest would constitutionalize much of local procedural law. One could "seek[] federal process as a substitute simply for state process." *Town of Castle Rock*, 545 U.S. at 772

(Souter, J., concurring). The Supreme Court has rejected such a view of the Due Process Clause. In *Olim*, for example, regulations required the prison administrator to conduct a particular kind of hearing before transferring a prisoner. *Olim*, 461 U.S. at 242. Presumably, a transfer could be invalidated upon a showing that no hearing had been conducted. But no liberty interest was created because there were no *substantive* limitations on the administrator's exercise of discretion. *See id.* at 248–51. The requirement of a hearing was merely a procedural limitation.

The authority cited by the concurrence is not to the contrary. *Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993), supports our view when it states, "'[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause.'" *Id.* at 656 (quoting *Olim*, 461 U.S. at 250 n.12). The issue in *Pusey* was whether an Ohio crime-victims' rights statute gave a victim a constitutionally protected right to notice of a hearing in the criminal proceedings against the perpetrator. The concurrence mistakenly suggests that the *Pusey* opinion turned on whether a particular outcome was mandated if notice was not given to the victim. But the opinion never addressed what the sanction would be for failure to give notice. Rather, it decided that no liberty interest was created because nothing the victim could say at the criminal proceeding would mandate a consequence for the perpetrator. *See id.*

More importantly, the concurrence so misreads *Olim* that one would think that the Supreme Court had affirmed, rather than reversed, the lower-court decision in that case, which took the same position as the concurrence here. The majority in *Wakinekona v. Olim*, 664 F.2d 708 (9th Cir. 1981), held that the prisoner had a constitutionally protected liberty interest derived from state regulations that "condition[ed] prison [interstate] transfers . . . upon a hearing by an impartial committee established by the prison administrator." *Id.* at 710. The court wrote that the regulations' "clear import is that a transfer will not be carried out absent a hearing directed to proof of the facts alleged in the notice received beforehand by the prisoner." *Id.* at 711. The Supreme Court's opinion never took issue with that interpretation of the regulations. (The concurrence somehow reads the Supreme Court's opinion as saying that a transfer could be effected without a hearing, but it relies on language in *Olim* saying only that the decision after the hearing is within the unfettered discretion of prison officials. *See* Op., (Ebel, J., concurring) at 3; *Olim*, 461 U.S. at 249.) The Ninth Circuit rejected the proposition that "no procedural requirements can create a substantive liberty interest, unless the events which may cause a transfer are specified in those requirements." *Wakinekona*, 664 F.2d at 711–12. It held that the state "regulations create a justifiable expectation that a prisoner will not be transferred absent the specified procedures [and] consequently give rise to a constitutionally protected liberty interest." *Id.* at 711. What the Supreme Court did in *Olim* is to

reject emphatically the view of the Ninth Circuit. To read *Olim* as support for the concurrence is misguided.

This is not to say that there is no role for procedural due process in the grand-jury context. We do not address here the unraised issue of what safeguards are constitutionally required before a grand jury can issue an indictment. All we say is that the state notice statute does not affect what is required by the Due Process Clause. "[W]hen a state establishes procedures to protect a liberty interest that arises from the Constitution itself[,]. . . the state does not thereby create a new constitutional right to those procedures themselves, and non-compliance with those procedures does not necessarily violate the Due Process Clause." *James*, 606 F.3d at 657. Our holding is simply that the New Mexico law on which Plaintiffs hinge their argument creates no protected liberty interest.

## III. CONCLUSION

We AFFIRM the judgment of the district court.

10-2213, <u>Elliot v. Martinez</u>

**EBEL**, Circuit Judge, concurring.

I concur separately to identify what, in my view, is a misapprehension of due process jurisprudence in the hypothetical situation contemplated in a paragraph near the end of the majority opinion. The state statute in the hypothetical, unlike the statute actually at issue in this case, would require automatic dismissal of an indictment and release from custody of a grand jury target if the target had not been provided the statutorily required notice. The majority opinion posits, in dicta, that even in that instance, there would be no liberty interest, created by state law and protected under the Due Process Clause. Respectfully, I disagree. In the hypothetical situation posed by the majority opinion, I would hold that a liberty interest in the statutorily mandated notice would exist if the statute required dismissal of the indictment and release from custody of the grand jury target whenever the state failed to afford such notice. Indeed, I believe that the crux of this case is that the New Mexico law calls only for notice and does not additionally mandate a particular outcome when that statutory directive is not followed.

The majority opinion earlier correctly recognizes that "a state-created interest is not protected by the procedural component of the Due Process Clause unless . . . the asserted right to property or liberty is <u>mandated</u> by state law when specified substantive predicates exist." Maj. Op. at 6. The opinion illustrates that proposition with the example of a prison inmate in a state whose law requires that the inmate be granted parole if the inmate has not violated prison regulations for ten years. The opinion

accurately observes that in that instance, a "protected liberty interest" would arise since "release is mandated when the substantive predicate (no violations for 10 years) is satisfied."[1] Id. Then, perplexingly to me, the majority opinion dismisses a hypothetical situation not before the court and reaches a suggested result that I believe would be incorrect.

State-granted procedure can be protected under the Due Process Clause when non-observation of such procedure necessarily results in a particular substantive outcome.

> Stated simply, "a State creates a protected liberty interest by placing substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S., at 249. . . . [T]he most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official decision-making, Hewitt v. Helms, 459 U.S., at 472 . . . , and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.

Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 462 (1989).

Thompson thus recognizes two requisite prongs for state-created liberty interests: first, substantive requirements governing official decisionmaking; and second; mandatory outcomes that turn on the failure to meet those requirements. See id. In other words, when state law contains substantive predicates that supply "decisionmaking criteria which serve to limit discretion," id., and the law also contains "'explicitly mandatory

---

[1] In contrast, if the state "statute grant[ed] the parole board complete discretion in making parole decisions, [the statute would not] create a liberty interest." Wood v. Utah Bd. Of Pardons & Parole, 375 Fed. App'x 871, 874 n.3 (10th Cir. 2010) (unpublished) (internal quotation marks omitted); see id. at 874 (recognizing that "[i]t is well established that, where a state provides a discretionary parole regime, prisoners do not have a liberty or property interest in parole").

2

language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow," then "the State has created a liberty interest." Id. at 463 (citing Hewitt, 459 U.S. at 471-72). These criteria are sensible because only upon their satisfaction would one have a "legitimate claim of entitlement" to the interest in question, as required for Fourteenth Amendment protection, as opposed to a mere "abstract need or desire" or "unilateral hope" for it. Id. at 460 (internal quotation marks omitted) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981)).

To illustrate, in Olim v. Wakinekona, the Supreme Court declined to recognize a constitutionally protected entitlement to a prisoner's right, afforded by prison regulations, to a particular kind of hearing before he could be transferred to another prison because his transfer fate did not depend on whether the hearing had occurred. 461 U.S. 238, 248-51 (1983). Contrary to the presumption expressly made in the majority opinion about the facts of that case, Maj. Op. at 10, the inmate in Olim could have been transferred regardless of whether the hearing occurred. See 461 U.S. at 249 ("[T]he prison Administrator's discretion to transfer an inmate is completely unfettered. No standards govern or restrict the Administrator's determination."). Thus, as the state's failure to observe the statutorily guaranteed procedural right to a hearing had no mandatory bearing on its discretion to transfer the inmate, there were no substantive predicates the satisfaction of whose criteria mandated a particular outcome, so no constitutionally protected liberty interest arose. Id. at 249-51.

3

Likewise, in a notice-based case factually comparable to this one, the Sixth Circuit declined to recognize a constitutionally protected entitlement to state-guaranteed notice because the state's failure to observe notice procedures did not, under state law, mandatorily trigger any substantive outcome. See Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir. 1993). In that case, where state law "extend[ed] procedural rights, notice, to crime victims," requiring prosecutors to notify victims of upcoming trials or plea hearings, the Sixth Circuit refused to recognize a liberty interest because the statute "fail[ed] 'to protect a substantive interest to which the individual has a legitimate claim of entitlement'" given that the statute did not mandate a specific outcome in the event no notice had been given. Id. (quoting Olim, 461 U.S. at 250). The court held that the law "d[id] not create a liberty interest here because it only provides that the victim has the right to be notified" and did not additionally "specify how the victim's statement must affect the hearing nor . . . require a particular outcome based on what the victim has said." Id. at 656. Notably, the Sixth Circuit placed emphasized the language of the second prong of Thompson's liberty-interest standard, regarding mandatory outcomes, Thompson, 490 U.S. at 462, signaling that its holding depended on the inconclusive consequence of not providing notice, not on the lack of substantive predicates under the first liberty-interest prong of Thompson. See Pusey, 11 F.3d at 656.

This rule—that liberty interests in procedure arise only when a statute imposes substantive requirements to govern official decisionmaking and, further, mandates a certain outcome as a consequence of noncompliance with those requirements—is the

4

reason why I concur that, in this case, the New Mexico statute did not afford the appellants a liberty interest in the pre-indictment notice.  The statute clearly requires a specific manner of notice to grand jury targets, such that New Mexico officials have no decisionmaking discretion regarding whether to give notice.  See N.M.S.A. § 31-6-11(c).  Critically, however, the statute permits a grand jury to return an indictment regardless of whether the target has received notice, as long as eight jurors find probable cause to indict him; hence no outcome is mandated if the notice criterion is not met.  See N.M.S.A. § 31-6-10.  This is analogous to the warden in Olim being able to transfer an inmate regardless of whether a hearing had occurred, for example, or to trials and plea hearings in Pusey proceeding unaffected by whether victims had received notice.  Thus, since "an expectation of receiving process is not, without more, a liberty interest," Olim, 461 U.S. at 250 n.12 (emphasis added), the appellants' expectation of notice is not protected by the Due Process Clause.

But in the majority opinion's hypothetical, there would be "more," see id., namely, the guarantee of freedom upon failure to give the concrete, expectable, statutorily guaranteed notice.  That is, in the hypothetical, New Mexico would mandate a particular outcome upon the non-observance of procedure that specifically limits official discretion—i.e., officials would have no choice but to afford notice, or the indictment would be dismissed and the grand jury target released—so a liberty interest in notice-or-freedom would arise.  There would be both (a) substantive predicates regarding the guaranteed procedure (i.e., the state must give three days' notice to grand jury targets, as

5

in the actual statute, presumably), and (b) a mandatory outcome flowing from non-observance of said procedure (i.e., dismissal of the indictment and release of the target). See Thompson, 490 U.S. at 462. Therefore, in the hypothetical, the first prong is met. The requirement to provide three days' notice to grand jury targets is clearly an objective, defined criterion that limits official discretion, in the same way that, as the majority opinion recognizes, "no violations [of prison regulations] for 10 years" is a "substantive predicate." Maj. Op. at 6. The second prong is obviously met, too, in the hypothetical. Under the very premise of the hypothetical, dismissal of the indictment and release from custody are obligatory, absent notice.

I believe the majority opinion misinterprets "substantive" in this context when it emphasizes that "[t]he requirement that notice be given is not a substantive limitation, but a procedural one." Maj. Op. at 9. The "substantive" in "substantive predicates" does not mean "non-procedural," but rather "concrete." That is, the phrase "substantive predicates" refers to "particularized standards or criteria [that] guide the State's decisionmakers," or the "objective and defined criteria" upon which a decisionmaker is "required to base its decisions" and without which a decisionmaker could "deny the requested relief" for any reason. Olim, 461 U.S. at 249 (citations and internal quotation marks omitted, emphases added); see also Thompson, 490 U.S. at 462 (characterizing substantive predicates as "decisionmaking criteria which serve to limit discretion").

Accordingly, the majority opinion is misguided when it underscores the word "substantive," Maj. Op. at 10, in citing Olim's holding that the "prison regulations place

6

no substantive limitations on official discretion," <u>Olim</u>, 461 U.S. at 249, as though the Court's holding turned on some substantive/procedural dichotomy. Rather, the Court's ruling was based on the fact that "[n]o standards govern[ed] or restrict[ed] the Administrator's determination"—that the prison official's discretion remained "unfettered" notwithstanding "the fact that the prison regulations require a particular kind of hearing." <u>Id.</u> at 249-50. This is squarely contrary to the majority opinion's misunderstanding of <u>Olim</u> that "[p]resumably, a transfer could be invalidated upon a showing that no hearing had been conducted." Maj. Op. at 10. Because, in <u>Olim</u>, the hearing was inconclusive to the inmate's transfer, and "[p]rocess is not an end in itself," the inmate had no "legitimate claim of entitlement" to the regulation-guaranteed interest such that it would merit constitutional protection. 461 U.S. at 250.

Thus, I concur with the result and holding in this case that New Mexico did not create a liberty interest here because the state did not mandate a given result as a consequence of the state's failure to comply with the notice requirement. I concur only because of my disagreement with the example proffered in dicta in a paragraph near the end of the majority opinion.