FILED
United States Court of Appeals
Tenth Circuit

October 18, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RAYMOND ANTHONY LEWIS,

    Plaintiff - Appellant,

v.

JERRY CLARK, in his individual
capacity; LT. GORDON CLAPP, in his
official capacity; NATRONA COUNTY
SHERIFF'S DEPARTMENT DEPUTY
LIEUTENANT,

    Defendants - Appellees.

No. 15-8135
(D.C. No. 2:13-CV-00209-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Raymond Anthony Lewis, proceeding pro se, appeals the district court's Fed.

R. Civ. P. 12(b)(6) dismissal of his 42 U.S.C. § 1983 civil rights complaint relating to

his incarceration as a pretrial detainee. We have jurisdiction under 28 U.S.C. § 1291

and affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

Lewis was a pretrial detainee in Natrona County Detention Center ("NCDC")

in Wyoming from May to September, 2013. His § 1983 complaint alleges his

constitutional rights were violated at NCDC, and he named as defendants Lieutenant

Jerry Clark, then the Deputy Sheriff of Natrona County in charge of NCDC,[1] and

numerous unnamed sheriff's deputies in their official and individual capacities. The

district court dismissed Lewis's first complaint with leave to amend, then dismissed

his second complaint under Rule 12(b)(6) for failure to state a claim. On appeal, we

affirmed in part and reversed in part, remanding several of Lewis's claims for further

consideration. *Lewis v. Clark*, 577 F. App'x 786, 803 (10th Cir. 2014). The issues

on remand related to a one-time denial of Lewis's request to use NCDC's law library,

NCDC's ban on inmate-to-inmate correspondence, and its ten-page limit on incoming

mail.

The district court ordered the defendants to file a *Martinez* report.[2] After

consideration of the report, the court granted defendants' motion to dismiss all of

Lewis's official-capacity claims. It also granted Clark's motion to dismiss the

---

[1] Clark passed away after Lewis filed his notice of appeal. Natrona Sheriff's Department Lieutenant Gordon Clapp succeeded to Clark's position in charge of NCDC operations and has been substituted for Clark as to all of Lewis's official-capacity claims against Clark.

[2] *See Martinez v. Aaron*, 570 F.2d 317, 319-20 (10th Cir. 1978) (authorizing district courts to order prison officials to investigate an inmate's § 1983 claims to determine whether they have any factual or legal basis). A "*Martinez* report may not be used to resolve disputed factual issues," but "an uncontroverted report may serve as the basis for a dismissal" on a Rule 12(b)(6) motion. *Gallagher v. Shelton*, 587 F.3d 1063, 1067 n.7 (10th Cir. 2009).

individual-capacity claims against him. Finally, it dismissed the complaint in its entirety because Lewis never identified any of the unnamed officials.

II.

We review a Rule 12(b)(6) dismissal de novo. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). Because Lewis is proceeding pro se, we construe his pleadings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Library-Access-Retaliation Claim. Lewis alleges that on August 7, 2013, at 10:00 p.m., an unknown deputy denied him access to NCDC's law library on the stated ground that Lewis didn't need to use it because he had an attorney. He says the deputy denied him access in retaliation for the numerous grievances he had filed against NCDC officials, in violation of his rights under the First and Fourteenth Amendments.

The district court dismissed Lewis's retaliation claim because he didn't allege the unnamed deputy acted in accordance with any Natrona County or NCDC custom or policy of retaliation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (holding that an official-capacity claim functions as a claim against the governmental entity itself). Rather, Lewis alleges only one act by an unnamed deputy under a vicarious-liability theory, which isn't a permissible basis under § 1983. *Id.* at 691.

A governmental entity can be held liable under § 1983 only for an action the entity officially sanctioned, for the actions of an official with final policymaking authority, or for "a widespread practice that, although not authorized . . . , is so

3

permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122-23, 127 (1988) (internal quotation marks omitted).

On appeal, for the first time in his reply brief, Lewis suggests his retaliation claim isn't based only on the action of the unnamed deputy; he says that in the first complaint he filed—later amended—he attached grievances filed by other inmates which would show widespread retaliation by NCDC deputies. But his first complaint didn't allege any widespread policy of retaliation and, in any event, his amended complaint "supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (internal quotation marks omitted). Lewis's amended complaint very clearly based his retaliation claim on only the act of the one unknown deputy denying his August 7 library request. The district court correctly held this allegation fails to state a § 1983 official-capacity claim, and we affirm the dismissal.

Due Process Denial of Access to Law Library. Lewis further alleges that the one-time denial of library access on August 7 violated his procedural due process rights. He claims language in the NCDC handbook gave him a protected liberty and property interest in the use of the library that could not be denied without due process.

To set forth a procedural due process violation, a plaintiff must first show "the deprivation of an interest in life, liberty, or property." *Elliott v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012) (internal quotation marks omitted). Second, the plaintiff

4

must prove the procedures followed by the defendant didn't comport with due process of law. *Id.*

The district court correctly ruled that language in prison handbooks, rules, and regulations can't be used to derive property or liberty interests in the prison context. *See Cosco v. Uphoff*, 195 F.3d 1221, 1223-24 (10th Cir. 1999) (holding no liberty interest can arise from prison regulations); *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999) (holding the use of prison regulations to derive a liberty interest is "no more valid in the context of pretrial detainees"). "Liberty interests can either arise from the Constitution or be created by state law." *Cordova v. City of Albuquerque*, 816 F.3d 645, 656-57 (10th Cir. 2016). There is no right in the Constitution to unfettered use of a prison law library, *see Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996), and Lewis points to no state law giving him such an interest, *see Cordova*, 816 F.3d at 657 ("[A] State creates a protected liberty interest by placing substantive limitations on official discretion." (internal quotation marks omitted)). Thus, the district court correctly ruled Lewis's complaint fails to identify any constitutionally protected property or liberty interests which could support his claim that the one-time denial of library access deprived him of due process.

Ban on Inmate-to-Inmate Correspondence. Lewis alleges NCDC's absolute ban on inmate-to-inmate correspondence violates his First and Fourteenth Amendment rights because it doesn't allow an exception for family members. Lewis complains the ban prevents him from communicating with his son, an inmate at another prison. "[W]hen a prison regulation impinges on inmates' constitutional

5

rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* held that restrictions on inmate-to-inmate communications pass constitutional muster if they are reasonably related to legitimate and neutral governmental objectives. *Id.* at 89, 93.

To balance the guarantees of the Constitution with the legitimate concerns of prison administrators, courts use four factors set forth in *Turner*:

> (1) whether a rational connection exists between the prison policy [or] regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007) (citing *Turner*, 482 U.S. at 89-91). In ruling on a Rule 12(b)(6) motion to dismiss, the court needn't assess or address all four factors, but need only assess as a general matter whether the regulation is reasonably related to a legitimate penological interest. *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012). Lewis has the burden to "plead facts from which a plausible inference can be drawn that the [restriction] was not reasonably related to a legitimate penological interest." *Id.* (internal quotation marks omitted).

The *Martinez* report noted that NCDC implemented its inmate-to-inmate correspondence ban to ensure safety, security, and orderly operation of the facility. *See Turner*, 482 U.S. at 92 (recognizing that "correspondence between prison

6

institutions facilitates the development of informal organizations that threaten the core functions of prison administration, maintaining safety and internal security," among other concerns). Assessing the *Turner* factors, the district court determined the inmate-to-inmate correspondence ban was rationally connected to NCDC's legitimate security concerns and didn't restrict other means of communication; and Lewis didn't allege any facts showing that any alternative to the ban would alleviate NCDC's safety and security concerns. It concluded the inmate-to-inmate correspondence ban was reasonably related to a legitimate penological interest and therefore valid.

The first *Turner* factor—whether a rational connection exists between the prison regulation and a legitimate governmental interest—"is the most important," as "it is not simply a consideration to be weighed but rather an essential requirement." *Al-Owhali*, 687 F.3d at 1240 (internal quotation marks omitted); *Boles*, 486 F.3d at 1181 (holding the first *Turner* factor isn't merely a factor, but a required element). On appeal, Lewis asserts that NCDC's "fixation on safety and security" with respect to the inmate-to-inmate mail ban is "without merit." Aplt. Opening Br. at 6. But in his amended complaint he conceded that the "policy for no inmate-to-inmate mail" is "absolutely" "a legitimate safety concern." Aplt. App., Vol. I at 259 (Am. Compl.); *see also id*. at 612 (Resp. to Mot. to Dismiss) (stating "[t]here is NO dispute that the prohibition of 'inmate-to-inmate' correspondence is reasonably related to a Governmental interest . . . concerning safety & security").

7

We agree with the district court that Lewis's complaint fails to plead sufficient facts that would permit a court to plausibly infer that NCDC's inmate-to-inmate correspondence ban wasn't reasonably related to a legitimate penological interest and affirm the dismissal of this claim. *See id*. at 91-93 (upholding restrictions on inmate-to-inmate written correspondence as reasonably related to prison security and legitimate penological interests); *Al-Owhali*, 687 F.3d at 1241 (affirming dismissal where the prisoner's complaint failed to allege facts indicating the prison's ban on communication with his nieces and nephews lacked a legitimate penological objective).

Ten-Page Limitation on Mailed Items. Lewis alleges NCDC rejected research materials his wife mailed him based on a ten-page limitation on mailed items. He argues this action deprived him of his property without due process because the ten-page limit rule isn't published in NCDC's regulation handbook. "[M]inimum procedural safeguards must accompany the decision to withhold delivery or censor incoming prison mail." *Jacklovich v. Simmons*, 392 F. 3d 420, 433 (10th Cir. 2004).

The *Martinez* report showed that NCDC's handbook states prison employees may hold or return incoming mail if they deem it unacceptable in the exercise of their discretion, and if any mail is deemed unacceptable, it will be returned to the sender, and the prisoner will be notified of the violation. It is clear from Lewis's complaint that he received such a mail-violation notice, which prompted his grievance. The district court ruled that the allegations in Lewis's complaint demonstrated that NCDC afforded Lewis adequate procedural safeguards by notifying him that mail may be

8

withheld and providing him postdeprivation notice and the right to file a grievance, which process he indeed used.

Lewis's complaint merely alleges that he didn't receive advance notice of the ten-page limit. He asserted no facts, nor has he asserted any argument on appeal, suggesting he didn't receive adequate postdeprivation notice and remedy. It is well settled that a deprivation of property doesn't violate the Due Process Clause if a meaningful postdeprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Because Lewis was afforded an adequate postdeprivation remedy, we affirm the dismissal of this due process claim.

Lewis also alleges the ten-page limit violates his constitutional free-speech and free-association rights. The district court conducted the four-factor *Turner* test, concluding all weighed in favor of the limit's constitutionality. It concluded NCDC's stated interests in orderly prison operations, reducing contraband, and reducing the number of pages mail officials must scan are legitimate governmental interests rationally related to the policy, and that Lewis hasn't pled any facts indicating otherwise. It further noted Lewis's complaint doesn't allege any facts plausibly suggesting an alternative to accommodate him with minimal effect on NCDC's resources and penological interests. Finally, the court noted that NCDC already offers an alternative, allowing unlimited daily mailings of less than ten pages. Thus, it ruled Lewis's complaint failed to state a constitutional claim. *See Gee,* 627 F.3d at 1185 (holding a First Amendment claim of interference with the mail is not

plausible absent factual allegations showing the alleged interference violated prison rules or the rule was invalid under *Turner*).

On appeal, Lewis asserts NCDC's safety concerns are exaggerated and asserts other types of mail pose greater concerns than mailings over ten pages. Again, we agree with the district court's analysis and conclusion that Lewis's complaint doesn't state facts that plausibly indicate the page limits lack a rational connection to a legitimate penological interest.

Waived Arguments. Lewis asks that we reverse the denial of his second motion to amend his amended complaint and his motion to compel interrogatories. In a nondispositive pretrial order, the magistrate judge denied these motions. Lewis failed to file any objection or appeal from that order to the district court.

Magistrate judges are authorized to decide nondispositive pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and it is well established that we can't review a magistrate judge's order under § 636(b)(1)(A) unless the party requesting review timely objected to the order. *Pippinger v. Rubin*, 129 F.3d 519, 533 (10th Cir. 1997); *see also* Fed. R. Civ. P. 72(a) (requiring parties to file written objections to a magistrate judge's order on a nondispositive matter with the district court within fourteen days). In contrast to the notice and warning requirement that exists for pro se parties when a magistrate judge issues a report and recommendation regarding a dispositive matter under 28 U.S.C. § 636(b)(1)(B)-(C), *see Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991), it is immaterial that the magistrate judge's order didn't warn Lewis of the consequences of failing to file objections with the district

10

court.  *See Caidor v. Onondaga Cty.*, 517 F.3d 601, 604-05 (2d Cir. 2008) (noting that, in contrast to Fed. R. Civ. P. 72(b)(2), Rule 72(a) contains an express waiver provision that pro se litigants should be aware of, and holding that "a *pro se* litigant who fails to object timely to a magistrate judge's order on a non-dispositive matter waives the right to appellate review of that order, even absent express notice from the magistrate judge that failure to object within ten days will preclude appellate review"); *United States v. Schultz*, 565 F.3d 1353, 1362 (11th Cir. 2009) (same). Accordingly, these arguments are waived.

Individual-Capacity Claims.  Lewis didn't file a response to the Rule 12(b)(6) motion to dismiss filed by Clark in his individual capacity.  The district court ruled that Lewis's complaint fails to state any individual-capacity claim against Clark both because he didn't allege any personal participation by Clark in any of the alleged constitutional violations and because he hadn't plausibly stated any claim that his constitutional rights were violated.  The district court also dismissed Lewis's claims against the remaining defendants, all of whom were unnamed deputies, because he failed to name any, despite the information in the *Martinez* report.  We discern no error in the district court's analysis of these claims, and affirm the dismissal of the individual-capacity claims.

### III.

Lewis's motion for leave to file a second supplemental opening brief is denied. We also deny his request that we stay this appeal so that he may file objections to the magistrate judge's order.  We grant his request to proceed in forma pauperis, but we

11

remind him that he is obligated to continue making partial payments until the entire fee has been paid. The district court's judgment is affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge